Eric Charles **BILLER**, a minor by Gary D. **SUMMERS**, next friend, and Judith Biller, Respondents,

v.

**BIG JOHN TREE TRANSPLANTER MANUFACTURING AND TRUCK SALES, INC.,** and Jim Meade, Appellants.

No. WD 42580.

Missouri Court of Appeals, Western District.

Sept. 4, 1990.

---

David R. Buchanan, and Michael A. Childs, Brown, James and Rabbitt, P.C., Kansas City, for appellants.

John K. Thomas, Strop, Thomas and Burns, St. Joseph, for respondents.

Before LOWENSTEIN, P.J., and CLARK and FENNER, JJ.

CLARK, Judge.

This is an appeal from a judgment entered in favor of plaintiffs-respondents, Judith Biller and her grandson, Eric Biller, in a wrongful death action brought on account of the death of Charles Biller, the son of Judith and the father of Eric. At the time of his death, Charles Biller was at work as an employee of Moffet Nurseries. The suit charged that Biller's death was the result of negligence on the part of defendant-appellant Jim Meade, the president, owner and manager of Moffet Nurseries. The principal issue in the case is whether Meade, as the corporate officer of Biller's employer, is entitled to assert immunity from civil suit under the worker's compensation law as provided in § 287.120.1, RSMo 1986.

In general, the facts of the case were not in dispute. Moffet Nurseries was owned and managed by Meade and his wife. In 1988, Meade hired Biller as a heavy equipment operator. It was Meade's intention that Biller be charged with operating a machine known as a Big John Tree Transplanter. Although Biller had operated other machines for previous employers, he was not familiar with the tree transplanter. Accordingly, Meade undertook to train Biller by having Biller observe as Meade ran the machine on jobs and by allowing Biller to operate the machine controls under Meade's observation.

The tree transplanter is a mechanism mounted on a tandem dual wheel flat bed truck. It is a cone-shaped assembly with four independently operated digging spades which are extended to the rear of the truck, lowered to ground level and then maneuvered to prepare a conical excavation for planting a tree. By the same action, the spades are used to remove an existing tree from the ground and replant it in another location. The controls for operating the device are located to the rear of the truck bed on the driver's side of the vehicle.

On the date of Biller's death, he and Meade had been operating the tree transplanter during the second day of Biller's training. Five or six trees had been transplanted and toward the end of the afternoon, Meade was operating the machine's controls to handle the last tree planting for the day. According to Meade, he had not seen Biller for a period of from five to fifteen minutes, but Meade was proceeding with the work. The job was interrupted when Meade was alerted by Larry Runyan, a bystander, that Biller was pinned under a stabilizer bar of the machine on the opposite side of the truck.

The actual event of Biller's death was not witnessed by anyone. As the accident was reconstructed, however, it appeared that by some mischance, when the stabilizer bars used to balance the truck had been lowered preparatory to operation of the digging spades, Biller's head had been caught under the pad and crushed. At the offside location of the stabilizer bar, the extension of the bar and the lowering of the pad cannot be observed by the machine operator at the controls situated on the driver's side of the vehicle. Thus, as Meade was operating the controls which activate the stabilizers and the digging apparatus, he had no view of the site where Biller met his death. It is apparent that Meade, although having no knowledge of where Biller was during this final operation or what he may having been doing, decided to finish himself the task of planting the last tree for the day.

The suit by respondents claimed Meade to be liable in damages for the death of Biller because Meade was negligent in extending the stabilizer pads and proceeding with the digging operation without first ascertaining that Biller, and perhaps others, were clear of the work area and in no danger from the machine. Meade contends on this appeal that no cause of action in negligence could be asserted against him because the alleged breach of duty to keep a careful lookout, as respondents' suit claims, is merely the duty of the employer

to provide the employee a safe work place. That duty, Meade argues, is non-delegable and therefore if Meade did not discharge the duty, the claim is actually against the employer who is shielded from civil suit by the Worker's Compensation Act.

■ An employer owes various duties to his employees including the duty to provide a safe work place, to provide safe appliances and equipment, to warn of dangers about which the employee may be ignorant, to provide suitable fellow employees and to make and enforce rules for employee conduct. *Prosser & Keeton on Torts*, § 80, p. 569 (5th Ed.1984). The duty to provide a safe place to work is a duty which the master may not escape by delegating the task to someone else. *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 177 (Mo.App.1982). Thus, as in *Stanislaus v. Parmalee Industries, Inc.*, 729 S.W.2d 543 (Mo.App.1987), where a corporate officer or agent of the employer is performing a delegated duty involving the safety of the work place, he stands in the shoes of the employer and has no personal liability for non-performances of the duty.

■ Where an employee has been injured in consequence of some unsafe condition in the work place, his claim and the liability of the employer must also take cognizance of any applicable worker's compensation law. Once an employer, an employee and an accident fall under the Worker's Compensation Law, the case is cognizable by the Worker's Compensation Commission and the Commission's jurisdiction is original and exclusive. Section 287.120.-1, RSMo 1986; *Parmer v. Bean*, 636 S.W.2d 691, 693 (Mo.App.1982); *Sheen v. DiBella*, 395 S.W.2d 296, 302 (Mo.App. 1965). An employer is immune from common law liability for breach of his duty to provide a reasonably safe place to work. *JMF v. Emerson*, 768 S.W.2d 579, 581 (Mo. App.1989).

■ In consequence of the foregoing propositions, an employee injured pursuing his work duties and sustaining the injury because the work place was unsafe has no common law suit against either the employer or the employer's agent, but is relegated to those benefits afforded under the applicable worker's compensation law.[1] It is this theory upon which appellant rests his contention that respondents' civil suit should not have been entertained.

■ The rules considered above and relied on by appellant assume that the injured employee suffered an accident caused by the failure of the employer's agent to discharge a duty delegated by the employer in the area of work place safety. The immunity from civil suit depends on a factual matrix involving a duty owed to the employee by the employer. Personal tort liability may be imposed on the individual agent or corporate officer if it appears that the duty of care which was breached was one personally owed to the injured employee as a fellow employee. *Craft v. Scaman*, 715 S.W.2d 531, 537 (Mo.App.1986). Where the corporate officer or employer's agent steps out of his role as an agent acting for the employer and assumes the status of a co-employee working with the injured employee, a different relationship is created in which civil liability for negligence or nonfeasance may follow.

As relates to the limitations on civil actions for job related injuries covered by worker's compensation laws, such immunity from civil suit is available only to the employer and to the employer's agents acting to discharge some duty owed by the employer. Where the act or omission is one affecting rights and duties of co-employees, Missouri courts have consistently held that a co-employee is a third person within the meaning of § 287.150, RSMo 1986, and the co-employee may be sued in a civil action by the injured worker if the co-employee's negligence caused the accident, *Craft*, 715 S.W.2d at 536; *Badami*, 630 S.W.2d at 177.

■ Turning now to the facts of this case, it is apparent that when Meade hired

---

1. The assumption is made that both employer and employee are covered by a worker's compensation law. In the circumstance where no compensation law applies, the parties are, of course, left to civil law remedies.

Biller, it was expected that Biller would ultimately run the tree transplanting machine, releasing Meade to perform other duties. First, however, it was required that Biller be trained, and when Meade was so functioning as Biller's instructor, he was performing a task for which the employer was responsible. It was the obligation of Moffet Nurseries to provide Biller with instruction about the tree transplanter so that Biller would be able to work in a safe environment. Had Biller suffered his injury because Meade failed to give proper instructions in the operation of the machine or failed to warn Biller of any dangers the machine presented or otherwise did not adequately discharge the responsibility associated with Biller's training, respondents would have no civil suit against Meade. The critical question, therefore, is whether Biller suffered his fatal injury while in the process of being trained by Meade in the operation of the tree transplanter. The facts recounted earlier demonstrate that such was not the case.

According to Meade's own testimony, he was himself operating the tree transplanter when Biller was injured and at the time, he had no knowledge of where Biller was. For a period of some five to fifteen minutes before the accident, Meade was neither supervising Biller's work with the machine nor could Meade have been providing any instruction to Biller by showing him the use of the digger controls. The conclusion is inescapable that while Biller was presumably away from the job site, Meade simply decided to go ahead and finish the work himself. Regardless of what activity may have preceded the event in the course of Biller's training, at the time of the accident, Meade and Biller were in the relationship of co-employees.

The facts bearing on this question were not in dispute. The trial court correctly ruled as a matter of law that respondents were entitled to maintain this civil action against appellant for his negligence in failing to maintain a careful lookout for the safety of his co-worker, Biller. Appellant's first claim of error is denied.

Appellant's second point of error complains of the failure by the trial court to sustain objections to testimony elicited on cross-examination of Meade about his failure to give certain warnings and instructions to Biller. The asserted error was not included in the appellant's new trial motion and is therefore only reviewable for plain error as provided by Rule 84.13. We have examined the contentions and find no manifest injustice resulted.

■ Points III and IV raised by appellant argue that respondents did not make a submissible case and that the verdict directing instruction erroneously declared the law and was not supported by the evidence. The gist of the contentions on both points is that respondents failed to show that Meade had a duty to see or could have seen where Biller was at the time of the accident.

The claim of instruction error was not included in the motion for new trial and therefore it is not preserved for appellate review. *Holland v. American Republic Ins. Co.*, 779 S.W.2d 775 (Mo.App.1989). We decline to consider it.

The submissibility issue is controlled by the proposition that the duty of care imposed by the law of negligence arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Lowrey v. Horvath*, 689 S.W.2d 625 (Mo. banc 1985). The duty of care imposed on Meade arose because of the hazard inherent in the operation of the tree transplanting machine. Anyone in the way of the digging spades or the stabilizer pads was at risk of injury as these components were maneuvered. Meade was aware that the full area of the machine's operation was not visible to him from his position at the control panel and also that the whereabouts of Biller were not known. Respondents demonstrated by their evidence that Meade could have looked to the off side of the truck to see that the way was clear before he engaged the controls and that he owed a duty to do so, particularly in view of his knowledge that Biller should have been

somewhere in the area. A submissible case was made by the plaintiffs.

■ In his Point V, appellant asserts that the verdict for respondents was against the weight of the evidence. The point, so stated, presents nothing for appellate review. First, it fails to indicate any ruling by the court contended to have been in error and does not say why there was error. It is not in compliance with Rule 84.04(d). Second, even overlooking the deficiency noted, questions as to weight of evidence are not subjects of appellate review. This court does not reweigh the evidence but considers the evidence in the light most favorable to the prevailing party. *Neal v. Sparks*, 773 S.W.2d 481, 486 (Mo.App.1989). So viewed, the evidence supports the jury's verdict.

■ Appellant's Point VI contends the trial court erred when it allowed a second witness to testify concerning the condition of Biller's body. Appellant argues that the testimony appealed to the emotions and prejudices of the jury and was cumulative. No citations of authority supporting the point are given, a violation of the rule announced in *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978), and a ground for rejecting consideration of the point.

■ Ex gratia, we have reviewed the claim and find it to be without merit. Prior to and at trial, appellant refused to admit that Biller died as a result of trauma to his head. It therefore became necessary for respondents to prove the cause of death and for the jury to decide, based on the evidence, whether Biller was killed by the impact of the stabilizer pad on his head. The evidence showing the condition of Biller's body addressed that issue on which respondents had the burden of proof.

■ The claim by appellant here seems to acknowledge the relevancy and admissibility of evidence showing how Biller met his death, the complaint being that testimony by a second witness on the subject was cumulative. A complaining party is not, however, entitled to assert prejudice by the admission of evidence if that evidence is merely cumulative to other related admitted evidence. *Iota Management Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 411 (Mo.App.1987).

■ Finally, appellant argues that the trial court erred when it admitted in evidence a videotape of Biller and his son playing the summer before the accident and photographs of Biller and his son taken prior to the divorce of Biller and Eric's mother. The point is argued on the same ground advanced in support of appellant's Point VI and also on the contention that certain of the photographs were too remote in time to be relevant.

Admission of demonstrative evidence such as photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Wood River Pipeline Company v. Sommer*, 757 S.W.2d 265, 269 (Mo. App.1988). To be admissible, evidence must be relevant, that is, having a tendency to prove the issue on which it is offered, and whether evidence is relevant is largely committed to the discretion of the trial court. *Ransom v. Adams Dairy Co.*, 684 S.W.2d 915, 917 (Mo.App.1985); *Riney v. Zenith Radio Corp.*, 668 S.W.2d 610, 611 (Mo.App.1984). A trial court's ruling on matters of relevancy will not be disturbed absent a clear showing of prejudice to the complaining party and an abuse of discretion by the trial court. *State ex rel. Missouri Hwy. and Transp. Comm'n v. Meramec Valley Elev. Inc.*, 782 S.W.2d 642, 645 (Mo.App.1990).

Here, there was no abuse of discretion. The tapes and photos were relevant to show the close relationship between Biller and his son and to demonstrate that the relationship had not deteriorated after the divorce. Appellant's last point is denied.

The judgment is affirmed.

All concur.