Robert GUNNETT, Plaintiff–Appellant,

v.

GIRARDIER BUILDING AND RE-ALTY CO., et al., Defendants–Respondents.

No. ED 79188.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 19, 2002.

Paul J. Passanante, St. Louis, MO, for appellant.

Mark G. Burns, Sunset Hills, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Through the vehicle of this appeal, we have been asked to offer definitive guidance on a question that has long vexed Missouri judges and legal commentators:[1] does the immunity afforded by the workers' compensation law shield a co-employee from a suit by his fellow worker?

Today we offer our answer: it depends.

A fact-dependent inquiry must be undertaken to determine whether liability may be imposed on the co-employee. This necessity flows from the intended scope of the immunity to be afforded by the workers' compensation law. A historical review of workers' compensation law clarifies the point.

Following in the steps of reform in western Europe at the end of the nineteenth century, most notably in Germany and England, various state legislatures began to enact workers' compensation legislation in the early 1900s. See 1 A. Larson, Workmen's Compensation Law, section 5.20 (1998). Though there were initial constitutional challenges and setbacks, enactment of workers' compensation laws spread swiftly across the country; by 1920, all but eight states had adopted compensation acts. 1 A. Larson, Workmen's Compensation Law, sections 5.20 and 5.30 (1998). Missouri followed in 1925.[2] Prior to the enactment of workers' compensation laws, an employee's only hope for redress for injuries sustained on the job was at common law. See E. Blair, Reference Guide to Workmen's Compensation Law, section 1:00 (1968). However, the employee was met with what has been described as the "unholy trinity" or the "wicked sisters" of common-law defenses: assumption of risk, contributory negligence and the fellow-servant doctrine.[3] See W. Prosser, Law of Torts, section 80 at 526–7 (4th ed.1971); W. Keeton, Prosser and Keeton on Torts, section 80 at 573 (5th edition, 1984); See also Larson, supra section 4.30. Recoveries by injured workers were few and far between; it has been estimated that between 70 and 94 percent of injured workers who sought to recover for their physical injuries received nothing, leaving the burden of the injury upon the injured worker. See Todd v. Goostree, 493 S.W.2d 411, 416 n. 2 (Mo.App.1973)(noting that of the 50,000 accidents reported in Missouri in 1921, only ten percent received any compensation.); Blair, supra section 1:00; Keeton, supra section 80 at 572; Larson, supra section 4.50.

Workers' compensation statutes were enacted to ameliorate these harsh realities. See Todd, 493 S.W.2d at 416; Blair, supra section 1:00; Larson, supra section 5.20. As Larson notes, the necessity for workers' compensation legislation arose out of the sharp increase in industrial accidents accompanying the rise of the factory sys-

---

1. See Hedglin v. Stahl Specialty Co., 903 S.W.2d 922(Mo.App. W.D.1995)(Smart, J., concurring). See also, Paul J. Passanante and Sara Stock, Help! We're Lost! Co–Employee Immunity in Missouri, 57 J.Mo.B. 53, 64 (2001); William E. Hanna, Co-employee Immunity: What Does It take to Plead "Something More?", 53 J.Mo.B. 65, 77 (1997).

2. Missouri's Workers' Compensation Law was adopted by the legislature in 1925, approved by the voters of Missouri in 1926, and became effective in 1927. See Bethel v. Sunlight Janitor Service, 551 S.W.2d 616, 618 (Mo.1977); Wengler v. Druggists Mut. Ins. Co., 583 S.W.2d 162, 164 (Mo.1979).

3. We intend no sacrilege by reference to an "unholy trinity." Also, we acknowledge the blatant sexism of the phrase "wicked sisters". With the advances of moral relativism and feminism, we believe these "wicked sisters" are better understood as "wayward siblings."

tem and the simultaneous decrease in the employee's common-law remedies for his injuries. Larson, *supra* section 4.00. Workers' compensation legislation was based on certain foundational principles— to provide employees with rapid, definite and certain compensation for workplace injuries, and to place the burden of such losses on the industry. *Todd,* 493 S.W.2d at 416; *Bethel v. Sunlight Janitor Service,* 551 S.W.2d 616, 618 (Mo. banc 1977). For as so aptly stated "the cost of the product should bear the blood of the workman." Keeton, *supra* section 80 at 573. And it is well established that enactment of workers' compensation laws was not meant as a supplement to the common law, but rather the workers' compensation laws are wholly substitutional in character and create entirely new rights and remedies. *Todd,* 493 S.W.2d at 416.

In creating these new rights and remedies, workers' compensation laws can be viewed as representing a compromise—a give and take between the employer and the employee. Workers' compensation laws provide a no-fault system of compensation for the employee. *Akers v. Warson Garden Apartments,* 961 S.W.2d 50, 56 (Mo. banc 1998); Keeton, *supra* section 80 at 573; Larson, *supra* section 2.10. The employee, who sustains an injury through an accident arising out of and in the course of employment, is provided certain compensation, without the necessity of having to prove fault on the part of the employer, and without being subject to the 'unholy trinity' of common-law defenses. *See Gambrell v. Kansas City Chiefs Football Club, Inc.,* 562 S.W.2d 163, 165 (Mo.App. 1978); *Todd,* 493 S.W.2d at 416; *Bethel,* 551 S.W.2d at 618; *Akers,* 961 S.W.2d at 56. In exchange for definite compensation for all work-connected injuries, the employee foregoes his right to sue his employer for negligence and to obtain the common-law measure of damages in cases where fault could be shown. *Leicht v. Venture Stores, Inc.,* 562 S.W.2d 401, 402 (Mo.App.1978). From the employer's perspective, the employer accepts absolute liability, assuming a broader range of liability than it might have had at common law, under a fault-based system of liability. *See Id.; Akers,* 961 S.W.2d at 56. But, in exchange, the employer is protected since the compensation under the workers' compensation statutes is the injured employee's exclusive remedy against the employer; the employer is protected from the possibility of having to pay out the full measure of common-law damages. *See Leicht,* 562 S.W.2d at 402; *Gambrell,* 562 S.W.2d at 165; Section 287.120 RSMo. 2000.[4]

■ Thus, workers' compensation laws address the rights and responsibilities as between the employer and the employee for work-related injuries. Workers' compensation laws are not meant to be a substitute for common-law actions for wrongs or people not comprehended within the law. *Deckard v. O'Reilly Automotive, Inc.,* 31 S.W.3d 6, 14 (Mo.App. W.D.2000); *Gambrell,* 562 S.W.2d at 165; section 287.120.2. Missouri's workers' compensation act does not take away the employee's right to bring a common-law action against an offending third person. *Schumacher v. Leslie,* 360 Mo. 1238, 232 S.W.2d 913, 916 (1950). An employee is free to bring a common-law action against negligent third parties. *Zueck v. Oppenheimer Gateway Properties, Inc.,* 809 S.W.2d 384, 390 (Mo. banc 1991). Given the foundations upon which workers' compensation law is based, this only makes sense; there has been no such give and take between the injured employee and the negligent third party, as

---

**4.** All further statutory references are to RSMo.2000, unless otherwise indicated.

there has been between an employee and his employer. Nor does this third party share in the burden and obligation of financing the compensation fund. *See Wengler v. Druggists Mut. Ins. Co.*, 583 S.W.2d 162, 167 (Mo. banc 1979). Thus, since the third party does not share the burdens, they should not be entitled to the immunity which the workers' compensation law provides for the employer.

■ And so, we return to our co-employee. It has long been established in Missouri that a co-employee is regarded as a "third party" under workers' compensation law, and amenable to an action at common law.[5] *Sylcox v. National Lead Co.*, 225 Mo.App. 543, 38 S.W.2d 497, 502 (1931). Missouri is in the distinct minority of states which permit an injured worker to bring a negligence action against a co-employee.[6] *See* 6 A. Larson, Workers' Compensation Law, section 72.11 n. 13.2 (1998); *Hedglin v. Stahl Specialty Co.*, 903 S.W.2d 922, 928 (Mo.App. W.D. 1995)(Smart, J., concurring). Nevertheless, our workers' compensation statute, as it exists today, allows for such actions; however, not all actions will lie. *See e.g., Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670 (Mo. banc 1993); *Collier v. Moore*, 21 S.W.3d 858 (Mo.App. E.D.2000); *Sexton v.*

*Jenkins & Associates, Inc.*, 41 S.W.3d 1 (Mo.App. W.D.2000).

■ When one brings a common-law negligence action, the plaintiff must "establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty and, that plaintiff's injury was proximately caused by defendant's failure." *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990). So too when an injured worker seeks to bring a negligence action against his co-employee. Thus, as in other common-law actions, the threshold matter is to establish the existence of a duty owed by the co-employee. But, it is not simply the existence of a duty on the part of the co-employee, but the nature of the duty involved which is key in determining whether a co-employee may be held liable. This is the focus of the 'Wisconsin approach' to co-employee immunity that we adopted in *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo.App. E.D. 1982).[7] As so aptly described by the Vermont court, the touchstone of co-employee common-law liability is "whether the negligence occurred in the performance of a non-delegable duty of the employer as opposed to arising out of an obligation owed to the injured employee." *Gerrish v. Savard*, 169 Vt. 468, 739 A.2d 1195, 1198–99

---

5. We consider the term co-employee to include a corporate officer, a supervisor, as well as a co-worker.

6. As Larson notes, there is a strong tide toward co-employee immunity. As recently as 1974, a majority of states permitted suits against co-employees. As of 1998, only Arkansas, Missouri, Maryland and Vermont permitted such suits. A limited number of states still do permit actions for 'willful negligence,' as well as for intentional torts. *See* 6 A. Larson, Workers' Compensation Law, section 72.11 (1998).

7. The 'Wisconsin approach' is the approach adopted by all the states which currently permit negligence actions against a co-employee.

*See Garrity v. Manning*, 164 Vt. 507, 671 A.2d 808, 810 n. 1 (1996); *Athas v. Hill*, 300 Md. 133, 476 A.2d 710 (1984); *Hastings v. Mechalske*, 336 Md. 663, 650 A.2d 274 (1994). As developed in a line of Wisconsin cases, the corporate officer or supervisory employee is subject to liability for negligence if he breaches a duty of care which he personally owed to the plaintiff. The co-employee is not liable merely for breaching a duty that the employer owed the injured employee. *See Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973); *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51 (1977). This line of cases in Wisconsin has been superseded by statute.

(1999). For only in the latter case will an action lie.

■■ In adopting the "Wisconsin approach" in *Badami*, this court held that "charging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty charges no actionable negligence." *Badami*, 630 S.W.2d at 180. On this point, there is little dispute; this holding of *Badami* has been widely followed. *See e.g., Wright v. St. Louis Produce Market, Inc.*, 43 S.W.3d 404 (Mo.App. E.D.2001); *Felling v. Ritter*, 876 S.W.2d 2 (Mo.App. W.D. 1994); *Lyon v. McLaughlin*, 960 S.W.2d 522 (Mo.App. W.D.1998); *Davis v. Henry*, 936 S.W.2d 862 (Mo.App. E.D.1997); *State ex rel. Feldman v. Lasky*, 879 S.W.2d 783 (Mo.App. E.D.1994). The decision of *Badami* reflects the overall principle that if a co-employee is negligent in his discharge of the employer's non-delegable duty, the co-employee cannot be held personally liable for his negligent performance of that duty. Providing a safe place to work is just one of the non-delegable duties an employer owes to its employees—a duty which the employer may not escape by delegating the task to someone else.[8] *Biller by Summers v. Big John Tree Transplanter Mfg. And Truck Sales, Inc.*, 795 S.W.2d 630, 633 (Mo.App. W.D.1990). Thus, when an employee fails to perform the employer's non-delegable duty, the failure is that of the employer, not the employee. *See Biller*, 795 S.W.2d at 633; *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51, 53 (1977). Since the failure is that of the employer, and since recovery under workers' compensation law is the employee's exclusive remedy vis-a-vis his employer, a co-employee performing a non-delegable duty of the employer is entitled to the benefit of the employer's immunity from common-law negligence suits under workers' compensation law.

And so, to hold a co-employee personally liable, "something more" must be charged. *Badami*, 630 S.W.2d at 180. The *Badami* court suggested that the extent and nature of this "something more" could only be determined on a case-by-case basis. *Id.* As noted above, the focus should be on the existence, and most importantly, the nature of the duty involved. Under the Wisconsin approach, a corporate officer or supervisory employee is subject to liability for negligence if he breaches a duty of care which he personally owed to the plaintiff. *Laffin*, 253 N.W.2d at 53. Following in this line, we announced in *Craft* that

> The "something extra" required to impose tort liability includes any affirmative act, taken while the officer is acting outside the scope of the employer's responsibility, that breaches a personal duty of care the officer owes to a fellow employee.

*Craft v. Scaman*, 715 S.W.2d 531, 537 (Mo. App. E.D.1986).

Since *Craft*, courts across Missouri have acknowledged this distinction—that for a co-employee to be held liable, he must have breached a personal duty of care that he owed to the injured employee. *See Biller*, 795 S.W.2d at 633; *Murry v. Mer-*

---

**8.** An employer's responsibility at common law was to discharge five specific duties relevant to safety: (1) to provide a safe workplace; (2) to provide safe equipment in the workplace; (3) to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware; (4) to provide a sufficient number of competent fel-low employees; and (5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety. W. Keeton, Prosser and Keeton on the Law of Torts, section 80 at 569 (5th ed.1984); *Biller by Summers v. Big John Tree Transplanter Mfg. and Truck Sales, Inc.*, 795 S.W.2d 630 (Mo. App. W.D.1990).

*cantile Bank, N.A.,* 34 S.W.3d 193, 197 (Mo.App. E.D.2000); *Workman v. Vader,* 854 S.W.2d 560, 564 (Mo.App. S.D.1993). The Supreme Court of Missouri has addressed the issue of co-employee liability/immunity but twice—each time with limited discussion of the issue. *See Tauchert v. Boatmen's National Bank of St. Louis,* 849 S.W.2d 573 (Mo. banc 1993); *Kelley v. DeKalb Energy Co.,* 865 S.W.2d 670 (Mo. banc 1993). However, the Court, in *Tauchert,* did acknowledge the distinction between a breach of the employer's duty to provide a safe workplace and a breach of a personal duty of care, and that in the latter case, there would be no immunity afforded by the workers' compensation act. *Tauchert,* 849 S.W.2d at 574. Moreover, construing "something more" as a breach of a personal duty of care that the co-employee owes to the injured worker also comports with the foundational principle of common-law negligence actions—that there must exist some duty on defendant's part owing to the plaintiff, the observance of which would have avoided the injury. Thus, the court in *Badami* was correct—whether a co-employee may be held liable will depend on the facts and circumstances of each case.

 Once the facts and circumstances are known, whether this personal duty exists in any particular situation is a question of law, to be determined by the court. The court must determine whether,

> upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make

up the law; and it must be determined only by the court.

Keeton, *supra* section 37 at 236; *Strickland v. Taco Bell Corp.,* 849 S.W.2d 127, 131 (Mo.App. E.D.1993). No universal test for duty has ever been formulated. Keeton, *supra* section 53 at 358. As Keeton commented, the statement that a duty does or does not exist really begs the essential question—"whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Keeton, *supra* section 53 at 358. For duty is "only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." Keeton, *supra* section 53 at 358. The question of whether a duty will be imposed rests upon several policy factors, including: (1) the social consensus that the interest is worthy of protection, (2) the foreseeability of the injury and the degree of certainty that the protected person suffered injury, (3) the likelihood of the injury, (4) the moral blame society attaches to the conduct, (5) the prevention of future harm, (6) consideration of cost and the ability to spread the risk of loss, and (7) the consequences of placing that burden on the defendant. *Strickland,* 849 S.W.2d at 132; *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 431–2 (Mo. banc 1985). "A duty may . . . . be imposed by the legislature or the common law based upon a relationship between the parties," or "imposed by a court under the circumstances of a given case based upon what the tortfeasor knew or should have known." *Strickland,* 849 S.W.2d at 132; *See also, Hoover's Dairy, Inc.,* 700 S.W.2d at 431. However, no duty is owed to persons outside "the orbit of the danger as disclosed to the eye of reasonable vigilance." *Krause,* 787 S.W.2d at 710, *quoting Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928).

Even though the existence of a duty owing from the co-employee to the injured worker necessarily depends upon the particular circumstances and upon policy considerations, our cases do offer some guidance as to when this duty will be imposed. As noted by the court in *Sexton, Davis,* and *Lyon,* cases that have recognized that the "something more" element had been met, the supervisor/co-employee was present at the time of the injury, and had personally performed an act or operated a piece of equipment that resulted in the injury, or had directed the fellow worker to engage in dangerous activities. *Sexton v. Jenkins & Associates, Inc.,* 41 S.W.3d 1, 5 (Mo.App. W.D.2000); *Davis,* 936 S.W.2d at 864; *Lyon,* 960 S.W.2d at 526; *See Hedglin,* 903 S.W.2d at 927(holding supervisor personally liable for death of employee where supervisor personally arranged for employee to be dangled from the tines of a forklift over a vat of scalding water into which employee fell and died); *Craft,* 715 S.W.2d at 537–8(holding president of fireworks company personally liable for employee's injuries where president personally held a board directly against spinning spool of fuse to prop it up, with the fuse catching fire and burning employee operating the machine); *Tauchert,* 849 S.W.2d at 574(holding summary judgment improper against employee where supervisor had personally arranged the faulty elevator hoist system); *Biller,* 795 S.W.2d at 634(finding corporate officer did not enjoy immunity from common-law suit for wrongful death of employee whose head was crushed by tree-transplanting machine which officer was operating); *Pavia v.*

*Childs,* 951 S.W.2d 700, 702 (Mo.App. S.D.1997)(manager of grocery store personally liable in operating a forklift to elevate an employee fifteen feet off the floor to reach items in warehouse).[9]

Cases from other jurisdictions are also instructive. In Maryland, a supervisory employee will be held personally liable only if the supervisor "commits an affirmative, direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee." *Athas v. Hill,* 300 Md. 133, 476 A.2d 710, 718 (1984); *See also Hastings v. Mechalske,* 336 Md. 663, 650 A.2d 274, 279 (1994). And from the Wisconsin line of cases—for an officer or supervisor to be personally liable there must have been "some affirmative act of the officer or supervisor which increased the risk of injury to the employee. If the officer or supervisor engages in this act, he owes the involved employee a duty to exercise ordinary care under the circumstances." *Laffin,* 253 N.W.2d at 53; *See also, Kruse v. Schieve,* 61 Wis.2d 421, 213 N.W.2d 64 (1973). In Minnesota, the type of personal duty contemplated that will give rise to a cause of action is "no different than the duty any individual owes another arising from normal daily social contact—the duty to refrain from conduct that might reasonably be foreseen to cause injury to another." *Wicken v. Morris,* 527 N.W.2d 95, 98 (Minn.1995).[10]

Further guidance is provided by the Supreme Court of Vermont. In analyzing

**9.** We concede that not all Missouri cases finding "something more" can be reconciled to our analysis. *See e.g., Workman v. Vader,* 854 S.W.2d 560 (Mo.App. S.D.1993).

**10.** Under Minnesota law, to hold a co-employee liable, the injured employee must establish (1)that the co-employee had a personal duty

toward the employee, the breach of which resulted in the employee's injury, and that the activity causing the injury was not part of the co-employee's general administrative responsibilities, and (2) the injury arises from gross negligence on part of the co-employee. *Wicken v. Morris,* 527 N.W.2d 95 (Minn.1995).

the decisions of *Craft* and *Kruse*, the court noted that the co-employees in those cases had "engaged in an affirmative act directed at the particular employee that increased the risk of injury to that particular employee, thus creating the personal duty that is the basis for co-employee liability. It is the affirmative act directed at a particular employee that places the [co-employee's] conduct outside the scope of an employer's non-delegable duties." *Gerrish v. Savard*, 169 Vt. 468, 739 A.2d 1195, 1201 (1999).

So then, summarizing, a co-employee cannot be held personally liable for his negligence in carrying out the employer's non-delegable duties, whether it be the employer's duty to provide its employees with a reasonably safe place to work, or any other non-delegable duty. To maintain an action against the co-employee, the injured worker must demonstrate circumstances showing a personal duty of care owed by defendant to the injured worker, separate and apart from the employer's non-delegable duties, and that breach of this personal duty proximately caused the worker's injuries. Whether a personal duty has arisen so that the co-employee may be held liable will necessarily depend on the facts and circumstances of the case, determined as a matter of law, giving due consideration to the policy factors described above. What we hold, given the cases from this state, as well as those from other jurisdictions, is that a personal duty will arise out of circumstances where the co-employee engages in an affirmative act, outside the scope of employer's non-delegable duties, directed at a worker, increasing the risk of injury. For in engaging in a direct, affirmative act, the co-employee owes a personal duty to exercise ordinary care under the circumstances and to refrain from conduct that might reasonably be foreseen to cause injury to another.

*Factual Background*

Turning then to this case, Gunnett, the injured worker, appeals from the trial court's judgment dismissing his negligence action against his co-employee and supervisor, defendant Summerlad, for lack of subject-matter jurisdiction, on defendant's motion raising the exclusivity of workers' compensation law.[11]

At the time he was injured, Gunnett was a roofer working on a construction project. Defendant was employed as foreman by the general contractor for the project.[12] During the construction, a hole was made in the roof deck so that a skylight could eventually be installed. At some point prior to Gunnett's injury, defendant covered the hole with a piece of plywood, attaching the plywood from the underside of the roof rather than to the exterior surface. Gunnett was injured when, as he alleged, he "fell onto and through the skylight opening" and fell onto the flooring below.

Gunnett filed a negligence claim against the respondent. Defendant moved to dismiss for lack of subject-matter jurisdiction, asserting that Gunnett had failed to allege an affirmative negligent act outside the

---

11. Gunnett also brought a negligence action against Girardier Building and Realty Company, the general contractor for the project. This action was also dismissed by the trial court, for lack of subject-matter jurisdiction. Gunnett did not appeal this dismissal.

12. Gunnett was employed by the roofing subcontractor for the project. As such, the general contractor was a statutory employer of Gunnett, and defendant a supervisor. *See* Section 287.040.3; *Vatterott v. Hammerts Iron Works, Inc.*, 968 S.W.2d 120 (Mo.1998); *Sexton v. Jenkins & Associates, Inc.*, 41 S.W.3d 1 (Mo.App. W.D.2000).

scope of employer's responsibility to provide a safe workplace, that defendant was thereby immune from tort liability pursuant to section 287.120, and that therefore, the trial court lacked subject-matter jurisdiction. The trial court sustained the motion, and this appeal followed. Gunnett argues the trial court erred in dismissing his claim because he alleged affirmative acts of negligence on the part of defendant that breached a personal duty of care defendant owed to Gunnett, and therefore, defendant does not enjoy immunity under the workers' compensation act. We affirm the judgment of the trial court.

## Standard of Review

The first point of contention between the parties in this case is the appropriate standard for our review. Defendant argues for an abuse-of-discretion standard. Gunnett, relying on *Workman v. Vader*, 854 S.W.2d 560 (Mo.App. S.D.1993), argues that we must determine if the facts pleaded and the inferences reasonably drawn therefrom demonstrate any ground for relief, taking all facts alleged in the petition to be true, and construing all allegations liberally and favorably to the plaintiff. While there is authority for both standards when reviewing a motion to dismiss for lack of subject-matter jurisdiction on grounds of the exclusivity of workers' compensation law, we agree with defendant that the proper standard for our review is the abuse-of-discretion standard.

As defendant did in this case, a motion to dismiss for lack of subject-matter jurisdiction is the proper method to raise the exclusivity of workers' compensation law as a defense to a common-law tort action. *Parmer v. Bean*, 636 S.W.2d 691, 695 (Mo.App. E.D.1982). While dismissal of the petition might, in some technical sense, be understood as a dismissal for failing to state a cause of action outside the scope of employer's duty to provide a safe workplace, the real question at issue is whether the circuit court has subject-matter jurisdiction. Section 287.120 has abrogated the original jurisdiction of the courts over all cases cognizable under the workers' compensation act. *Parmer*, 636 S.W.2d at 695; *Kemper v. Gluck*, 327 Mo. 733, 39 S.W.2d 330, 332 (1931). Jurisdiction is vested exclusively in the workers' compensation commission. *Id.* When a court lacks subject-matter jurisdiction, it has no right, power or authority to act in the matter, and thus any action the court takes is null and void. *Parmer*, 636 S.W.2d at 695. And thus, the circuit court should dismiss an action whenever it "appears" that it lacks subject-matter jurisdiction. Rule 55.27(g)(3); *Parmer*, 636 S.W.2d at 694. The determination of whether a case falls within the commission's jurisdiction is a question of fact, and as such, should be left to the sound discretion of the trial judge. *Kemper*, 39 S.W.2d at 332; *Parmer*, 636 S.W.2d at 694. Thus, we review for abuse of discretion. *Murry v. Mercantile Bank, N.A.*, 34 S.W.3d 193, 195 (Mo.App. E.D.2000)

## Analysis

In order for Gunnett to maintain his negligence claim against his supervisor, he must allege circumstances showing a personal duty of care owed by defendant to Gunnett, separate and apart from the employer's non-delegable duties. If the allegations simply show supervisor's discharge of employer's non-delegable duty, then the supervisor is afforded immunity under the workers' compensation act and the circuit court did indeed lack subject-matter jurisdiction, as jurisdiction would lie exclusively with the commission. In his petition, Gunnett alleged: (1) defendant secured the plywood in an improper manner, placing the plywood on the underside of the roof-

ing truss rather than over the top of the roofing deck; (2) defendant failed to affix the plywood in an appropriate manner, by using the appropriate length and size, or sufficient number of fixative devices; (3) defendant knew, or by reasonable inspection should have known, that the manner of placement would not support individuals; and that (4) the improper installation of the plywood rendered the roofing deck to be in a hazardous and dangerous condition.

In conjunction with his motion to dismiss, defendant filed an affidavit in which he stated that he attached the plywood to the bottom of the skylight opening because roof flashing had yet to be installed. Additionally, he averred that the plywood was to prevent debris from falling onto people below, and was attached from the underside so as to avoid having the roofer toss the plywood off the roof when preparing to install the flashing.

■ As stated above, courts should look to the existence and nature of the duty in the particular situation at hand. Employers have a non-delegable duty to provide a safe workplace. Placing plywood over a skylight opening in a roof falls within the ambit of this duty. Whether the employee performing a non-delegable duty of the employer does so in a negligent manner is of no moment when determining whether the court or commission has jurisdiction over the matter. Here, defendant, in placing plywood over a skylight hole in the roof was discharging the employer's duty to provide a safe workplace. Any negligence which occurred while he performed this duty is the failure of the employer, not the defendant. As the failure is that of the employer, Gunnett's remedy is under the workers' compensation act.

■ To hold defendant personally liable, Gunnett must allege facts and circumstances which show that a personal duty of care existed, owed by defendant to Gunnett, separate and apart from the employer's non-delegable duties. Here, having considered the facts and circumstances of this case, mindful of the policy considerations as to when a duty will be imposed, we conclude that no such duty existed. Lacking in this case is any allegation that defendant engaged in an affirmative act directed at Gunnett that increased the risk of injury. When defendant attached the plywood over the hole, there was no affirmative act directed toward Gunnett. Moreover, the defendant was not present at the time Gunnett fell onto and through the opening, nor did the defendant direct Gunnett to step onto the plywood.

Concluding then, the only duty here is the non-delegable duty of the employer, and failure to discharge this duty is that of the employer. Defendant, as the employee discharging the employer's non-delegable duty, enjoys immunity from common-law suit; recovery under workers' compensation law is Gunnett's exclusive remedy. Jurisdiction lies exclusively with the commission, not the court. The court did not abuse its discretion in dismissing Gunnett's claim. The judgment is affirmed.

SHERRI B. SULLIVAN, P.J., and LAWRENCE G. CRAHAN, J., concur.