CORRECTED April 9, 2025



## MISSOURI COURT OF APPEALS
### WESTERN DISTRICT

| | | |
|---|---|---|
| **CHRISTOPHER R. ELLIS,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD87443** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | |
| **TORT VICTIMS' COMPENSATION FUND,** | ) | **April 1, 2025** |
| | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division Two: Janet Sutton, Presiding Judge,**
**Mark D. Pfeiffer, Judge, and Gary D. Witt, Judge**

Christopher R. Ellis (Ellis) appeals from a final award denying compensation under the Tort Victims' Compensation Fund (the Fund) issued by the Missouri Labor and Industrial Relations Commission (the Commission). In his sole point on appeal, Ellis argues that the Commission erred in denying his claim under the Fund because he is an uncompensated tort victim under section 537.681, in that a workers' compensation claim for a heat stroke is a personal injury lawsuit as defined in section 537.675.[1] The Commission's award is affirmed.

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) as currently updated.

**Factual and Procedural Background**

Ellis was employed by JK Concrete, LLC (Employer). On June 21, 2017, Ellis was working at a job site, setting walls for a storm shelter in a ditch at T Highway in Benton County, Missouri. The temperature was over ninety degrees. Ellis informed the owner of JK Concrete, LLC (Owner) that he did not feel well. Ellis's foreman (Foreman) was also aware that Ellis did not feel well. Ellis asked Owner to wait and pour the concrete the following day as the crew was worn out, but that request was denied and the concrete was poured around 3:00 p.m. that same day. While Ellis was putting the ties in the walls, Ellis became shaky, weak, had muscle cramps, and was dropping things.

Foreman first took Ellis to Owner's home, and then to a local clinic. The clinic called an ambulance and Ellis was transported to the emergency room. Once at the emergency room, Ellis stated he had been outside since 6:30 a.m. working with concrete and that he started having muscle cramps around 11 a.m. as well as dizziness, nausea, headache, and profuse sweating. The medical impression was heat exhaustion, dehydration, and acute renal failure. Ellis was admitted to the hospital for two days.

In July 2019, a doctor performed an independent medical evaluation on Ellis's behalf. The doctor opined that Ellis sustained a significant heat stroke on June 21, 2017, and assessed a 2% permanent partial disability to the body as a whole as a result of the heat stroke.

Ellis filed a workers' compensation claim and discovered that Employer did not have workers' compensation insurance. In January 2021, Ellis had a hearing before the division of workers' compensation, and the Administrative Law Judge (ALJ) found that Ellis's accident or occupational disease arose out of and in the course of employment. The ALJ awarded Ellis a total of $9,040.39 based on $600.00 for two weeks of temporary total disability, $2,400.00 for

2% permanent partial disability to the body as a whole, $5,930.29 in medical expenses, and $110.10 in litigation costs.  Ellis filed the award in the Circuit Court of Benton County, Missouri, which granted a judgment in favor of Ellis for $9,040.39.

Employer did not make any payments on the judgment.  On August 29, 2022, Ellis filed a claim under the Fund.  Ellis received a notice of administrative determination denying benefits in April 2023, finding that Ellis was not entitled to benefits under the Fund.  The determination explained that:

> The [Fund] is intended for claimants who suffered a personal injury or wrongful death through a tort.  It was not intended as a fund for claimants to recover uncollected judgments not involving a personal injury action or tort.  Here, [Ellis] has not identified a tort or personal injury action that justifies an award under the [Fund].  The transcript judgment was for the workers' compensation award; it was not for a personal injury or tort.  [Ellis] did not file a lawsuit against his former employer for a personal injury or tort.

Ellis filed a request for hearing after administration determination denying benefits from the Fund.  After a hearing before an ALJ on November 15, 2023, Ellis was denied compensation under the Fund because he did not meet the definition of an uncompensated tort victim under section 537.675.1(5).

In December 2023, Ellis filed a petition for review with the Commission.  The Commission issued a final award denying compensation, affirming the ALJ with a supplemental decision.  The Commission found that the "filing of a workers' compensation claim did not initiate a 'personal injury action or wrongful death lawsuit,' as those terms are used to define an uncompensated tort victim in [section] 537.675.1(5)."  Instead, Ellis filed a workers' compensation claim that "initiated an administrative adjudication process under Chapter 287 RSMo that provided an alternative to the tort remedies available in a personal injury action or wrongful death lawsuit."

3

Ellis appeals. Additional facts relevant to the disposition of the appeal are included below as we discuss Ellis's sole point on appeal.

**Standard of Review**

Article V, section 18 of the Missouri constitution "provides for judicial review of the [C]ommission's award to determine whether the award is 'supported by competent and substantial evidence upon the whole record.'" *Jackson Cnty. v. Earnest*, 540 S.W.3d 464, 469 (Mo. App. W.D. 2018) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003)). Additionally, section 287.495.1 instructs that we "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award" only if we find:

> (1) That the [C]omission acted without or in excess of its powers;
> (2) That the award was procured by fraud;
> (3) That the facts found by the [C]omission do not support the award; [or]
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*Id.*

Questions of law are reviewed *de novo*. *Id.* "The Commission, as the finder of fact, is free to believe or disbelieve any evidence. We defer to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations." *Id.* (citation omitted).

**Legal Analysis**

In Ellis's sole point on appeal, he asserts that the Commission erred in denying his claim under the Fund because he is an uncompensated tort victim under section 537.681, in that a workers' compensation claim for heat stroke is a personal injury lawsuit as defined under section 537.675.

The purpose of section 537.675 is to "create a fund to compensate certain tort victims who might otherwise be forced to rely on public assistance, while other tort victims, particularly those receiving large punitive damages awards, receive more than is necessary to pay for their

4

injury." *Gremminger v. Mo. Lab. and Indus. Rels. Comm'n*, 129 S.W.3d 399, 402 (Mo. App. E.D. 2004) (quoting *Fust v. Att'y Gen. for the State of Mo.*, 947 S.W.2d 424, 430 (Mo. banc 1997)). Section 537.681.1(1) provides that uncompensated tort victims are eligible for compensation from the Fund. *See id.* An uncompensated tort victim, as relevant here, is defined as:

> (a) [A] party in a personal injury or wrongful death lawsuit; or is a tort victim whose claim against the tort-feasor has been settled for the policy limits of insurance covering the liability of such tort-feasor and such policy limits are inadequate in light of the nature and extent of damages due to the personal injury or wrongful death;
> (b) Unless described in paragraph (a) of this subdivision:
>> a. Has obtained a final monetary judgment in that lawsuit described in paragraph (a) of this subdivision against a tort-feasor for personal injuries, or wrongful death in a case in which all appeals are final;
>> b. Has exercised due diligence in enforcing the judgment; and
>> c. Has not collected the full amount of the judgment; . . .

Section 537.675.1(5).

Determining that an individual is an "uncompensated tort victim" does not guarantee they will receive compensation under the Fund but, instead, renders them eligible to make a claim. *Skabialka v. Tort Victim Comp. Fund*, 133 S.W.3d 565, 568 (Mo. App. E.D. 2004) ("[E]ligibility is a threshold requirement, not a guarantee of compensation.").

In contrast to a tort victim who is part of a personal injury or wrongful death lawsuit, workers' compensation law "creates an exclusive remedy for employees for personal injury or death by accident or occupational disease arising out of and in the course of an employee's employment, irrespective of negligence." *Montgomery v. Coreslab Structures (Mo.), Inc.*, 697 S.W.3d 766, 771 (Mo. App. W.D. 2024). It is well established that workers' compensation laws were not intended to supplement the common law, but instead "are wholly substitutional in character and create entirely new rights and remedies." *Gunnett v. Girardier Bldg. and Realty Co.*, 70 S.W.3d 632, 636 (Mo. App. E.D. 2002). *See also State ex rel. Tri-Cnty. Elec. Co-op.*

5

*Ass'n v. Dial*, 192 S.W.3d 708, 710 (Mo. banc 2006). Workers' compensation can be viewed as a compromise between the employer and employee. *Gunnett*, 70 S.W.3d at 636. An employee foregoes their right to sue the employer for negligence and obtain the full common-law measure of damages in exchange for receiving definite compensation for their work-related injury. *Id.* Similarly, the employer assumes a "broader range of liability than it might have had at common law" in exchange for protection from the possibility of paying the full common-law measure of damages because workers' compensation is the employee's exclusive remedy. *Id. See State ex rel. Larkin v. Oxenhandler*, 159 S.W.3d 417, 421 (Mo. App. W.D. 2005) ("The substitution of the Workers' Compensation Law for traditional tort remedies reflects an [sic] historical compromise recognizing the benefits of providing a means to effectively resolve claims for workers' injuries without resorting to the unpredictability of litigation.").

Ellis argues that he is qualified to receive benefits under the Fund as an uncompensated tort victim despite obtaining a judgment following a workers' compensation claim. Ellis argues he meets the definition of an uncompensated tort victim because he suffered a personal injury, obtained a judgment, and has not collected any payments on the judgment. Ellis contends that the common definition of "lawsuit" includes a claim under workers' compensation law and that nothing in the Fund statutes indicate it does not apply to workers' compensation claims.

We disagree with Ellis's analysis.[2] Section 537.675.1(5) clearly defines an uncompensated tort victim as an individual who is a:

---

[2] The Fund correctly points out that Ellis does not specify the grounds on which he is seeking relief under our standard of review. The Fund argues in its brief that Ellis could only be making an against-the-weight-of-the-evidence challenge but that he fails to completely follow the procedure for such a challenge. We disagree. Instead, Ellis argues the threshold question of whether a workers' compensation claim with an uninsured employer qualifies the claimant as an uncompensated tort victim to receive benefits under the Fund. This is a legal question involving

6

> [P]arty in a personal injury or wrongful death lawsuit; or is a tort victim whose claim against the tort-feasor has been settled for the policy limits of insurance covering the liability of such tort-feasor and such policy limits are inadequate in light of the nature and extent of damages due to the personal injury or wrongful death[.]

Ellis did not initiate a personal injury or wrongful death lawsuit.[3] *See* section 537.675.1(5). Nor did he have a claim against Employer that was settled for the policy limits of insurance covering Employer's liability. *See* section 537.675.1(5). Therefore, we find that Ellis does not meet the definition of an uncompensated tort victim based on the plain meaning of section 537.675.1(5). *See Mo. Ethics Comm'n v. LeVota*, 639 S.W.3d 438, 444 (Mo. App. W.D. 2021) (quoting *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909-10 (Mo. banc 2006)) ("The goal of statutory analysis is to ascertain the intent of the legislature, as expressed in the words of the statute[,] . . . by giving the language used its plain and ordinary meaning.").

According to Ellis, he believed he had a civil claim outside of workers' compensation but was "limited" because of Missouri law. When an employer is not insured (workers' compensation insurance) and does not qualify as a self-insurer, an employee injured in the course of employment has the option of either filing a workers' compensation claim or bringing suit in the circuit court. *Hood v. Menech*, 658 S.W.3d 178, 182 (Mo. App. E.D. 2022) (citation omitted). The employee must choose which option to pursue to finality because the election of remedies doctrine "provides that if there are two or more inconsistent remedies available, the

---

statutory interpretation, not a weighing of whether there was substantial evidence to support the award.

[3] We note that "lawsuit" is defined as a "legal case brought before a court for adjudication; esp[ecially], a civil proceeding instituted in court by one or more plaintiffs against one or more defendants[.]" Black's Law Dictionary (12th ed. 2024). Whereas, "administrative proceeding" is defined as a "hearing, inquiry, investigation, or trial before an administrative agency, usu[ally] adjudicatory in nature but sometimes quasi-legislative." Black's Law Dictionary (12th ed. 2024).

election to pursue the one is a bar to any suit based on the other." *Id.* at 183 (quoting *Lewis v. Gilmore*, 366 S.W.3d 522, 525 (Mo. banc 2012)). Ellis chose to pursue a workers' compensation claim and, therefore, cannot now pivot to pursue a remedy available to uncompensated tort victims just because Employer failed to make payments on the judgment based on the workers compensation claim.

We also note that workers' compensation claims provide separate avenues for enforcing an unpaid award. Specifically, section 287.500 "provides the means by which a final Commission award becomes enforceable." *Deane v. Mo. Emps. Mut. Ins. Co.*, 437 S.W.3d 321, 325 (Mo. App. W.D. 2014) (citation omitted). Accordingly, any party in interest to a workers' compensation award may file the award in the appropriate circuit court and the circuit court must render a judgment under section 287.500. *See id.* The judgment, and related proceedings, must be treated as if it was a final judgment "rendered in a suit duly heard and determined by said court." *Id.* (citing § 287.500). Therefore, Ellis could pursue enforcement of the Benton County Circuit Court judgment through a recognized judicial enforcement mechanism (e.g., civil contempt). *See id.* at 325-26 (citation omitted) (declining to find a cause of action in tort for insurer's failure to comply with a final worker's compensation award and explaining employee is entitled to pursue judicial enforcement because "[c]ourts have inherent power to enforce their own judgments . . . when they are called upon to do so"). "A judgment creditor is also permitted to attempt to directly collect a judgment through attachment or garnishment proceedings." *Id.* at 326 n.6 (quoting *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 112 (Mo. App. W.D. 2012)).

Ellis chose his path by filing his claim for injuries through workers compensation instead of filing a civil action. Ellis is not an uncompensated tort victim under the Fund.

Ellis's sole point on appeal is denied.

## Conclusion

The Commission's award is affirmed.

Janet Sutton, Presiding Judge

Mark D. Pfeiffer and Gary D. Witt, JJ. concur.