STATE of Missouri Ex Rel., Bobby
G. LARKIN, Relator,

v.

Honorable Gary M. OXENHANDLER,
Respondent.

No. WD 64321.

Missouri Court of Appeals,
Western District.

Jan. 18, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 1, 2005.

Application for Transfer Denied
April 26, 2005.

Wade H. Ford, Jr., Susan Ford Robertson, Richard S. Ward, Columbia, MO, for relator.

Sidney E. Wheelan, Moberly, MO, for respondent.

Before: JAMES M. SMART, P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Relator Bobby Larkin seeks a writ of prohibition against the trial court's decision to proceed in a wrongful death action against him by Mendy Blades, widow; Fred and Linda Blades, parents; and James and Rachel Blades, children of Douglas Blades, decedent. Mr. Larkin filed a motion to dismiss the action for lack of subject matter jurisdiction, which was denied by respondent. Mr. Blades and Mr. Larkin were co-workers, employed by the same employer when Mr. Blades was killed by a vehicle driven by Mr. Larkin. This court issued a preliminary writ directing Respondent not to proceed with the underlying claim.

Mr. Larkin argues that the circuit court is exercising jurisdiction over a claim to which exclusive jurisdiction lies within the Labor and Industrial Relations Commission pursuant to the Workers' Compensation Act, RSMo § 287.120.1.[1] Because Mr. Blades' death occurred while both parties were acting within the course of their co-employment and the petition fails to sufficiently allege that Mr. Larkin performed any affirmative negligent acts beyond the duty to maintain a safe working environment, the trial court lacks subject matter jurisdiction over the claim. The writ of prohibition is made absolute.

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

## Allegations of Fact and Procedural History

The facts alleged in Plaintiff's First Amended Petition reflect that on October 12, 2000, Relator Bobby Larkin was employed by APAC,[2] and was assisting in a road construction project on U.S. Highway 63 in Boone County. Mr. Larkin was operating a dump truck owned by APAC and was transporting gravel to a construction site approximately ten miles north of Columbia. He had driven off site to acquire gravel and returned to unload his cargo; he traveled to the construction site via northbound U.S. Highway 63.

APAC was engaged in the process of building a shoulder along the eastern side of southbound U.S. Highway 63. At the location where the underlying incident occurred, Highway 63 is a four-lane highway with two southbound lanes separated from two northbound lanes by a grass median. On the date of the incident, the east lane (the passing lane for southbound traffic) and a majority of the west lane had been closed to traffic. The outermost portion of the west lane and the west shoulder remained open to traffic, but the speed limit for southbound motorists passing through the construction zone was 50 miles per hour rather than the normal 70 miles per hour limit. Bright orange traffic barrels delineated the boundaries of the construction zone. Signs were in place indicating to traffic that a portion of the roadway was closed and that speed was reduced.

Proceeding north in the northbound lanes of Highway 63, Mr. Larkin turned left to enter the construction site in the southbound lanes by using a turn-off perpendicular to the highway, located between the northbound and southbound lanes. Another worker told Mr. Larkin that the gravel was needed at a site north of the turn off, and Larkin began to back the dump truck to this different location. While backing the truck, Mr. Larkin entered the western lane of Highway 63, which remained open for traveling motorists, and began moving northbound in the southbound lane of traffic.

Douglas Blades was employed by APAC as a heavy equipment operator, and was operating a piece of heavy equipment when Mr. Larkin returned to the construction site. Mr. Blades noticed that Mr. Larkin had exited the boundaries of the construction site, and had backed the truck he was driving into the open southbound lane. At approximately 1:53 P.M., Blades left the equipment he was operating and walked behind Larkin's vehicle to flag down vehicles traveling through the site in the open lane. Deposition testimony indicates that Mr. Blades was given the instruction to "spot" the truck, i.e. showing the truck the spot to dump its cargo. The dump truck that Mr. Larkin drove was equipped with sideview mirrors, but provided the driver with no method of seeing directly behind the vehicle. While moving to the area designated to receive the truck's cargo, the truck struck Mr. Blades and backed over him, causing his death.

Mr. Larkin was sued for the wrongful death of Douglas Blades. Plaintiff's First Amended Petition alleges that while APAC is immune from suit under the Workers' Compensation Act, Mr. Larkin could be independently sued as a co-employee. The petition claims that Mr. Larkin created a hazardous condition by moving outside the designated construction zone and into the open lane of travel, which was compounded by backing the truck in a northbound di-

---

2. The evidence presented to the court indicates that APAC is not an acronym, but is instead is the entire name of the employer.

rection against southbound traffic. Plaintiff's petition alleges that Larkin "knew or should have known that Douglas Blades was behind his vehicle" and that Larkin "operated his vehicle ... with reckless, careless, and conscious disregard for the consequences." The petition further alleges that Larkin owed "a personal duty, separate and apart from the employer's duty to provide a safe work area" and that Larkin violated two separate Missouri statutes, constituting negligence per se.[3] Plaintiffs contend that these factors charge "something more" than the breach of an employer's duty of general supervision and safety, allowing the action to be brought outside the exclusive remedies provided by the Workers' Compensation Law.

Mr. Larkin filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 55.27, arguing that proper subject matter jurisdiction lies exclusively with the Labor and Industrial Relations Commission. The motion was overruled. Mr. Larkin then filed his petition for this court's writ of prohibition, and a preliminary writ of prohibition was issued on July 22, 2004.

### Standard for Prohibition

■ Petitions before this court for a writ of prohibition differ from traditional appeals, most importantly in that "[p]rohibition is an independent proceeding to correct or prevent judicial proceedings that lack jurisdiction." *State ex. rel. Pulliam v. Reine*, 108 S.W.3d 148, 154 n. 6 (Mo.App. W.D.2003) (quoting *State ex. rel. Am. Family Mut. Ins. Co. v. Koehr*, 832 S.W.2d 7, 8 (Mo.App. E.D.1992)). Prohibition serves as a means of preventing circuit courts "from exercising jurisdiction over

actions where workers' compensation provides the exclusive remedy; subject matter jurisdiction over such matters properly lies in the Labor and Industrial Relations Commission." *State ex. rel. Taylor v. Wallace*, 73 S.W.3d 620, 621 (Mo. banc 2002). "[P]rohibition is an appropriate remedy when it appears from the fact of the pleadings that defendant is immune from the suit as a matter of law." *State ex. rel. FAG Bearings Corp. v. Perigo*, 8 S.W.3d 118, 120 (Mo.App. S.D.1999). A circuit court lacking subject matter jurisdiction may take no action other than to dismiss the suit. *Id.*

■ Missouri's Workers' Compensation Law pre-empts judicial resolution of tort claims arising "out of and in the course of" employment; an employer is released from liability but required to furnish compensation irrespective of negligence. RSMo 287.120(1). "The Workers' Compensation Law supplants the common law in determining remedies for on-the-job injuries." *Sexton v. Jenkins & Assocs., Inc.*, 41 S.W.3d 1, 4 (Mo.App. W.D.2000) (quoting *Vatterott v. Hammerts Iron Works, Inc.*, 968 S.W.2d 120, 121 (Mo. banc 1998)). A more limited form of this immunity also extends to employees of the exempt employer; "[s]uits against employees personally for breach of the duty to maintain a safe working environment are preempted by the workers' compensation remedy[.]" *State ex. rel. Taylor*, 73 S.W.3d at 621. "However, an employee may sue a fellow employee for affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace." *Id.* at 621–22 (quoting *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 672 (Mo. banc 1993)).

---

**3.** Plaintiffs allege that Larkin violated RSMo 300.335 by backing "his vehicle when such movement could not be made with reasonable safety and without interfering with other traf-

fic" and RSMo 300.410 by failing "to exercise the highest degree of care to avoid colliding with a pedestrian."

When a workers' compensation exclusivity defense is raised, the motion to dismiss should be granted where it appears, by a preponderance of the evidence, that the trial court lacks subject matter jurisdiction because of workers' compensation exclusivity. *Collier v. Moore*, 21 S.W.3d 858, 860 (Mo.App. E.D.2000). While the burden of proving the lack of jurisdiction falls on the party who raises the motion to dismiss, the quantum of proof required is not high. *Id.* The Workers' Compensation Law is to be liberally interpreted, and where there is doubt regarding a question of jurisdiction, it should be resolved in favor of the Labor and Industrial Relations Commission. *Sexton*, 41 S.W.3d at 7.

### Discussion and Analysis

The substitution of the Workers' Compensation Law for traditional tort remedies reflects an historical compromise recognizing the benefits of providing a means to effectively resolve claims for workers' injuries without resorting to the unpredictability of litigation. *See Gunnett v. Girardier Bldg. & Realty Co.*, 70 S.W.3d 632 (Mo.App. E.D.2002). The extension of Workers' Compensation Law immunity to co-employees reflects a concern for those instances in which a co-employee's alleged negligence may require indemnification by the employer, effectively eliminating the component of the compromise that protects the employer. *See State ex. rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo. App. E.D.1982). A co-employee cannot be held liable for failing to carry out the nondelegable duties of the employer. *Gunnett*, 70 S.W.3d at 637. In order to strip a co-employee of the immunity of the Workers' Compensation Law, a petition must allege "something extra" beyond a breach of general supervision and safety. *Sexton*, 41 S.W.3d at 5. However, the underlying question of what is sufficient to meet this standard "has not proven susceptible of reliable definition, and Missouri courts have essentially applied the rule on a case by case basis with close reference to the facts in each individual case" *State ex. rel. Taylor*, 73 S.W.3d at 622.

Missouri courts have confronted a series of cases that question the extent to which injuries incurred by a co-employee's careless or negligent driving of an employer's vehicle can demonstrate the "something extra" necessary to deprive a co-employee of the immunity granted by the Workers' Compensation Law. While not the first case to address the issue, the Missouri Supreme Court clarified the outcomes for these types of cases with its decision in *Taylor*. In *Taylor*, the plaintiff was a "trash helper" who brought a claim of negligence against the driver of a trash truck alleged to have been driven carelessly. The plaintiff claimed head, neck, and back injuries as a result of the driver striking a mailbox while the plaintiff was riding on the vehicle while holding onto the back of the truck. *State ex. rel. Taylor*, 73 S.W.3d at 621. The Court observed "an allegation that an employee failed to drive safely in the course of his work and injured a fellow worker is not an allegation of 'something more' than a failure to provide a safe working environment." *Id.* at 622. The plaintiff alleged that careless driving is different from other forms of negligence because the statutory duty to drive carefully imposed a personal duty on the defendant, which the Court rejected:

> Respondent misconstrues this provision. It does not create a separate duty of driving with the highest degree of care on public roads. At most, it provides that the standard of conduct for discharging the general duty to behave carefully so as not to injure others is higher when a person is operating a motor vehicle on a public road. The

violation of the general duty to drive carefully as a part of one's work in order not to injure one's co-workers is not controverted into "something more" merely because fulfilling that duty may require more careful conduct than carrying out some other aspect of one's duty to maintain a safe working environment.

*Id.*

The Eastern District Court of Appeals confronted a similar instance of an injury resulting from careless driving by a co-employee in *Brown v. Roberson*, 111 S.W.3d 422 (Mo.App. E.D.2003). The plaintiff was a passenger in a tractor-trailer, who alleged that the driver's carelessness in driving and securing his load was sufficient to create liability in negligence when the tractor-trailer overturned and injured the plaintiff. *Id.* at 423. The appellate court found that allegations of driving at an excessive speed, taking an inappropriate route, and continuing to drive after the trailer's load had shifted constituted allegations of failing to discharge the duty to operate the vehicle safely, and were thus controlled by *Taylor. Id.* at 424–25.

This court examined a similar question in *Kesterson v. Wallut*, 116 S.W.3d 590 (Mo.App. W.D.2003). The plaintiff was a passenger in a pickup truck owned by her employer and driven by her supervisor, which crashed when the driver lost control due to the snow-packed pavement. *Id.* at 592. The plaintiff alleged that the accident was negligence, in that her supervisor failed to keep a careful lookout, drove at an excessive speed, and failed to drive within his own lane of travel. *Id.* at 593. This court rejected the plaintiff's "attempt to distinguish *Taylor* on the basis that it is limited to situations where the vehicle in question is essentially the workplace, as opposed to simply being a mode of transportation to and from work sites." *Id.* at 596.

The respondent contends that the present case is factually distinguishable from *Taylor* and its successive cases. *Taylor* does not, as the relator suggests, establish a bright-line rule that no accident involving a motor vehicle operated by a co-employee can present sufficient grounds for a court to exercise jurisdiction over a claim. The cases emphasize, however, that careless driving by a co-employee, without more, fails to meet the "something extra" required to take a tort action outside the purview of the Workers' Compensation Law. The cases reach this result by concluding that an employee's duty to drive safely is merely an extension of the duty to maintain a safe work environment.

Plaintiff's First Amended Petition essentially alleges two distinct actions that Respondent argues constitute "something more" than the general non-delegable duties of the employer. The first is that Mr. Larkin made the conscious decision to back his truck outside of the construction zone without taking measures to avoid a collision with oncoming traffic, despite his inability to see behind the truck, which was both unsafe and in violation of statute. The petition's second allegation is that Mr. Larkin knew of or should have known that Mr. Blades was behind the truck, knew or should have known that colliding with Mr. Blades would cause severe injury or death, and proceeded to back the truck despite this knowledge. The respondent argues that these alleged actions put the death of Mr. Blades in keeping with pre-*Taylor* cases illustrating actions by co-employees deemed to be outside the exclusive jurisdiction of the Workers' Compensation Law.

The crux of the first argument is that Mr. Larkin created a "dangerous situation" by backing his truck into oncoming

traffic and that Mr. Blades' response (flagging the oncoming traffic) was a direct result of this situation. Respondent contends this places the actions of Mr. Larkin in a posture similar to pre-*Taylor* cases asserting that actively creating a hazardous condition is "something extra" beyond the breach of the employer's duty to provide a safe place to work. *See e.g. Tauchert v. Boatmen's Nat'l Bank of St. Louis*, 849 S.W.2d 573, 574 (Mo. banc 1993) (supervisor not immune from liability after constructing a faulty hoist system that injured a co-employee); *Hedglin v. Stahl Specialty Co.*, 903 S.W.2d 922, 927 (Mo. App. W.D.1995) (supervisor not immune in wrongful death action after allegations that he had instructed decedent to hang from a forklift above scalding water).

■ However, the allegations against Mr. Larkin fail to meet the same concerns as those expressed within the cases stripping the co-employee of immunity. As this court observed in *Groh v. Kohler*, cases that have met the "something extra" requirement are usually triggered by "directing the employee to participate in acts that were dangerous and that a reasonable person would recognize to *be hazardous and beyond the usual requirements of the employment*." 148 S.W.3d 11, 14 (Mo.App. W.D.2004) (emphasis added). The sum of the allegations against Mr. Larkin are that he was instructed to move his truck to a different location, and he chose an unsafe manner of performing the requested action. Mr. Blades response, while arguably necessitated by the actions of Mr. Larkin, were not inconsistent with his normal job duties; Mr. Blades had been trained to flag traffic, and the petition alleges that he was performing this duty appropriately. The subsequent collision of the truck with Mr. Blades, while tragic, fails to amount to more than a failure to discharge the duty to preserve a safe working environment.

Mr. Larkin's actions do not demonstrate the affirmatively negligent conduct present in the cases that have stripped a co-employee of immunity under the Workers' Compensation Act.

The second argument suggests that Mr. Larkin had a personal duty of care to Mr. Blades to take notice of his presence and to avoid colliding with him. The Respondent places weight upon the decision of this court in *Biller v. Big John Tree Transplanter Mfg. & Truck Sales, Inc.*, 795 S.W.2d 630 (Mo.App. W.D.1990). In *Biller*, a supervisor was found to be liable in a wrongful death action for failing to keep a careful lookout for the location of his co-employee while operating a tree transplanter. *Id.* at 632. The *Biller* decision predates nearly all the cases reflecting the accepted interpretation of Workers' Compensation preemption, particularly *Taylor*, and fails to reflect the current status of the law. As such, *Biller* has been effectively overruled to the extent that it is in conflict with modern precedent. Accounting for the whereabouts of co-employees while engaging in an activity that could cause them harm is a component of the duty to maintain a safe working environment and does not constitute the "something extra" needed to deny a co-employee of Workers' Compensation immunity. *See Quinn v. Clayton Constr. Co.*, 111 S.W.3d 428 (Mo. App.E.D.2003) (co-employees were held immune in a negligence action for failing to ascertain the location of other workers before throwing angle iron from a rooftop). Respondent's contention that a driver is statutorily required to exercise a higher degree of care to avoid colliding with pedestrian is similarly without merit and is governed by the controlling ideas expressed in *Taylor*. The simple fact that a co-employee is required to be "more careful" in his duty to maintain a safe working environment does not convert the duty into

"something extra." *See State ex. rel. Taylor*, 73 S.W.3d at 622.

The Plaintiff's First Amended Petition fails to allege the "something more" or "something extra" required to deprive the Labor and Industrial Relations Commission of exclusive jurisdiction over the claim. As such, the circuit court lacked subject matter jurisdiction over the wrongful death action filed against Mr. Larkin.

The writ of prohibition is made absolute.

All concur.