**Eric D. BURNS, Respondent,**

v.

**Lynn M. SMITH, Appellant.**

**No. SC 87789.**

Supreme Court of Missouri,
En Banc.

Feb. 13, 2007.

M. Courtney Koger, Kansas City, for Appellant.

Anthony L. DeWitt, Edward D. Robertson, Jr., Mary D. Winter, Jefferson City, Michael D. Holzknecht, Paul L. Redfearn, Kansas City, for Respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

This is an appeal of a judgment holding defendant, Lynn M. Smith, liable for damages for personal injuries sustained by plaintiff, Eric D. Burns. The issue is whether plaintiff could maintain this action against defendant, a co-employee, notwith-

standing that plaintiff's injuries were covered under the Missouri Workers' Compensation Law. After appeal to the Court of Appeals, Southern District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is affirmed.

This was a court-tried case. The facts are largely uncontested, but to the extent there is a conflict, this Court will view the evidence and reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Plaintiff was employed as a driver by Kennon Ready–Mix, Inc. His duties included driving and cleaning a concrete delivery truck. Defendant was president of Kennon Ready–Mix and was plaintiff's supervisor. On April 7, 2000, plaintiff sustained extensive injuries when, as he was entering the cab of the concrete truck, the water pressure tank on the side of the truck exploded and threw him to the ground. The trial court made the following findings of fact:

1. A month or two prior to April 7, 2000, Defendant placed a weld upon a salvage water pressure tank over an area that had become corroded and rusted-through to the extent that it had developed a line of holes which were leaking pressurized water.

2. The leaking water pressure tank had been taken from a salvage concrete mixer truck which was more than twenty years old, and previously mounted upon the concrete mixer truck driven by Plaintiff for his employer Kennon Ready–Mix, Inc.

3. That when Defendant placed the weld upon the corroded, rusted-through area of the water pressure tank he did so knowing that he did not see very well, and that as a result, when he welded he had trouble defining where he was welding, and he admitted that therefore his welding of the tank was a kind of "feeling in the dark thing".

4. That at all times relevant, Plaintiff was employed by Kennon Ready–Mix, Inc. as a concrete mixer truck driver, and Defendant was Plaintiff's supervisor.

5. That upon completion of the weld, which took Defendant only a few minutes, Defendant instructed and directed Plaintiff to "Run it till it blows".

6. That on April 7, 2000, the water pressure tank violently exploded injuring Plaintiff, as Plaintiff was getting into the concrete mixer truck to back it up, empty it, and spray it down with water and pressure contained in the previously welded, rusted-out water pressure tank.

7. That the weld placed by Defendant upon the tank over the corrosion and rust caused the violent explosion of the tank, and Plaintiff's injuries.

8. That the weld placed by the Defendant upon the tank over the corrosion and rust increased the risk of the violent explosion of the tank, and Plaintiff's injuries.

9. That the water pressure tank which had been welded over an area of rust and corrosion was dangerous.

10. That when the tank exploded, the explosive force and the tank's mounting band struck Plaintiff in the right hip and leg, severely fracturing Plaintiff's right hip.

11. That the danger and risk of an exploding water pressure tank that had been welded over rust and corrosion was hazardous beyond the usual requirements of Plaintiff's employment driving a concrete mixer truck.

On the basis of these findings, and with the purpose of addressing defendant's contention that workers' compensation laws provided the exclusive remedy for this

work-related injury, the trial court entered the following conclusions of law:

> By welding over rust and corrosion on the leaking water pressure tank and by directing Plaintiff to "run it till it blows", Defendant acting as both [an officer] of Plaintiff's employer and as Plaintiff's supervisor, acted negligently and carelessly and committed affirmative negligent acts, separate and independent from Plaintiff's *employer's* duty to provide a reasonably safe workplace, which such acts by Defendant caused or increased the risk of injury to Plaintiff beyond the hazards normally associated with Plaintiff's employment, and therefore such acts constituted a breach of Defendant's personal duty of care owed to Plaintiff, and which such acts directly and proximately caused plaintiff's severe, permanent, disabling injuries and substantial damages....

On appeal, defendant renews his contention that, as a matter of law, workers' compensation was plaintiff's exclusive remedy for the injuries he sustained, and that the trial court erred in failing to dismiss this separate civil suit for damages. In particular, he claims that "the affirmative acts [of negligence] found by the trial court do not meet the legal standard ... that a reasonable person would recognize [those acts] as hazardous and beyond the usual requirements of employment" so to avoid the exclusivity of the workers' compensation remedy. Furthermore, he claims that there was no substantial evidence that demonstrated "that a reasonable person would have recognized the 'affirmative acts' of welding a rusted water tank and continuing to use it were hazardous beyond the usual requirements of employment as a cement-truck driver."

Section 287.120, RSMo 2000,[1] provides:

> 1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.
>
> 2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

The exclusivity provisions of section 287.120 do not explicitly bar actions against fellow employees, as opposed to actions against employers. However, Missouri courts have interpreted that provision to extend the scope of immunity from liability to fellow employees, except in certain limited situations. In *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620 (Mo. banc 2002), this Court recently reaffirmed its earlier holdings that,

> [t]he Workers' Compensation Law provides the exclusive remedy against employers for injuries covered by its provisions. This immunity from suit extends to employees of the exempt employer, albeit in a more limited fashion. Suits against employees personally for breach of the duty to maintain a safe working environment are preempted by the

1. All statutes cited are to RSMo 2000 unless otherwise indicated.

worker's compensation remedy: "However, an employee may sue a fellow employee for affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace." [Footnotes omitted.] *Id.* at 621–22, *quoting Kelley v. DeKalb Energy Co.,* 865 S.W.2d 670, 672 (Mo. banc 1993).

The rationale for the imposition of co-employee liability "for affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace"—sometimes called the "something more" test—can be traced to the seminal case of *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175 (Mo.App.1982). In that case, Judge Satz wrote that,

> ... a corporate officer or supervisory employee performs in a dual capacity. He has immunity under the workmen's compensation law where his negligence is based upon a general non-delegable duty of the employer; he does not have immunity where he does an affirmative act causing or increasing the risk of injury. Something "extra" is required beyond a breach of his duty of general supervision and safety, for that duty is owed to the employer, not the employee. (citations omitted)

*Id.* at 179. Judge Satz concluded that,

> [c]harging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty charges no actionable negligence. Something more must be charged. The extent and nature of the additional charge can only be determined and sorted out on a case-by-case basis.

As this Court acknowledged in *Taylor,* 20 years after *Badami,* "The question of what constitutes an 'affirmative negligent act' has not proven susceptible of reliable definition," and as Judge Satz predicted, the courts "have essentially applied the rule on a case-by-case basis with close reference to the facts in each individual case." *State ex rel. Taylor v. Wallace,* 73 S.W.3d at 622. That said, however, the notion of an "affirmatively negligent act" certainly includes the commission of an intentional tort, and this Court has also described it in terms of "purposeful, affirmatively dangerous conduct." *Id.* On the other hand, it does not include, for example, mere proof "that an employee failed to drive safely in the course of his work and injured a fellow worker," which was the situation in *Taylor. Id.*

Consistent with the *Badami/Taylor* line of cases, the notion of an affirmatively negligent act—the "something more"—can best be described as an affirmative act that creates additional danger beyond that normally faced in the job-specific work environment. This description satisfies the concern that although there must be an independent duty to the injured co-employee, that duty cannot arise from a mere failure to correct an unsafe condition and must be separate and apart from the employer's non-delegable duty to provide a safe workplace. Though plaintiff, relying on several court of appeals opinions, suggests that a proper definition of the term "affirmatively negligent act" might also include, in the alternative, an act in which an employee "directs a co-employee to encounter a hazard," that act, in essence, is encompassed in the larger definition of an affirmative act that creates additional danger beyond that normally faced in the job-specific work environment.

Defendant urges this Court to define an "affirmatively negligent act" by incorporating a reasonable person standard, an approach that has been adopted in several recent court of appeals decisions. *See, e. g., Nowlin ex rel. Carter v. Nichols,* 163 S.W.3d 575, 578–79 (Mo.App.2005); *Groh*

v. *Kohler,* 148 S.W.3d 11, 14 (Mo.App. 2004); *Logan v. Sho–Me Power Elec. Co-op.,* 122 S.W.3d 670, 678 (Mo.App.2003). Under these cases, the standard for determining whether "something more" occurred that would permit recovery from a co-employee is a finding that a reasonable person would recognize that what occurred was hazardous beyond the usual requirements of employment. *Id.* A reasonable person standard is used, in other words, to review directives given by supervisors to employees that required those employees to engage in dangerous activities beyond the scope of their usual duties. *Id.* Applying a reasonable person standard to this case, then, defendant claims that repaired-by-weld pressurized tanks are commonplace in small cement delivery businesses and that no reasonable person who worked in the business would recognize repaired-by-weld tanks as hazardous.

This Court declines to adopt defendant's recommendation. On close examination of the first "something more" case in which the reasonable person language appears, there was no apparent intention to establish a new reasonable person standard. The court in that case, *Lyon v. McLaughlin,* 960 S.W.2d 522 (Mo.App.1998), merely observed that,

> [i]n cases that have recognized the "something more" element has been met, the supervisor had personally participated in the "something more" by directing the employees to engage in dangerous conditions that a reasonable person would recognize as hazardous and beyond the usual requirements of the employment.

The reference to "dangerous conditions that a reasonable person would recognize" was simply a comment on the kind of evidence that might satisfy the "something more" element, and the later cases simply misconstrued that comment as a new reasonable person standard.

Furthermore, and more importantly, an express reasonable person standard is unnecessary because the element of reasonableness is implicit in determining the presence or absence of an affirmatively negligent act.

Under the *Badami/Taylor* standard for determining "something more," this Court holds that the trial court did not err in entering judgment for plaintiff. Without recapping the findings of the trial court, there was ample evidence that defendant negligently welded the rusted pressurized water tank and that he directed plaintiff to "run it till it blows," conduct that satisfies the "something more" test.

Although defendant presented testimony that it is a common industry practice to place welds over the rusted holes in repairing pressurized water tanks and that defendant had repaired other tanks in that same way, the water tank in this case had rusted to the extent that holes developed in it, spanning about seven inches in length. All witnesses agreed that placing a weld over rust and corrosion creates a dangerous condition that would eventually fail, and that a welded, corroded leaking water pressure tank could explode. Plaintiff's expert testified that it was a mistake to have attempted to weld on this tank in particular, and even defendant's brother, Larry Smith, agreed that one is not supposed to weld over metal that is in such a condition due to the fact that the weld will not hold. Furthermore, plaintiff's evidence was that defendant was not a certified welder and that the weld he made was not uniform, but had lots of splatter from having the heat wrongly set in the welder, and had occlusions where parts of the metal's sharp edges had been vaporized, all contributing to an increased risk of explosion. When shown photographs of the irregular daubs of weld he had placed on the rusted tank—the location where it eventually exploded—defendant was asked to explain why some of the daubs of weld were

in a direction different than the main line of the weld. He then testified that this was because at age 54 he does not "see very good" and that he really needs glasses, but has never gotten prescription glasses, and instead buys two dollar reading glasses so he can read; therefore, he "has trouble when he tries to weld." He characterized his inability to see what he was welding as a "kind of a feeling in the dark thing."

This case is similar to an earlier "something more" case from this Court. *See Tauchert v. Boatmen's National Bank of St. Louis,* 849 S.W.2d 573 (Mo. banc 1993). The accident in *Tauchert* occurred when plaintiff was standing on top of an elevator cab and it fell five or six floors to the bottom of the shaft. *Id.* In conducting a final checkout of the elevator, defendant, plaintiff's supervisor, had devised a makeshift hoist system to raise the elevator, but the hoist failed causing the elevator to fall. *Id.* at 574. In reversing summary judgment for defendant, this Court held that, "Defendant's alleged act of personally arranging the faulty hoist system for the elevator may constitute an affirmative negligent act outside the scope of his responsibility to provide a safe workplace for plaintiff." *Id.*

In the case at hand, the most compelling evidence that establishes the "something more" element is that defendant instructed plaintiff to "run it till it blows," which was a not-too-subtle admission that plaintiff was aware that the water tank was dangerous and would eventually explode. By those words, defendant intentionally directed the plaintiff to undertake an activity that defendant knew would result in a particularly dangerous event. Whether, on other facts, the act of negligently welding an excessively corroded water tank would have been sufficient, in and of itself, to satisfy the "something more" requirement need not be determined, because

here, defendant's instruction to "run it till it blows" surely did so.

Defendant makes much of the fact that, at one point, plaintiff testified that he believed that plaintiff intended the directive to mean "use it until you can't use it no more," as if there were no danger. Plaintiff's testimony, however, is equally consistent with the idea that he should "use it until you can't use it no more" because it will have exploded. Moreover, there was no substantial evidence that plaintiff was somehow oblivious to the fact that complying with defendant's directive carried added danger. In fact, plaintiff's wife was so concerned about plaintiff's safety due to the welded tank that she told him to quit his job, though he refused. Defendant's argument to discount the directive simply doesn't hold.

All in all, and giving deference to the trial court as finder of fact, this Court holds that defendant's conduct constituted an affirmatively negligent act by creating an additional danger beyond that normally faced in his job-specific environment.

One small point remains. Defendant claims that prejudgment interest should not be awarded because plaintiff failed to include a request for prejudgment interest as part of his prayer for relief in the petition. Defendant concedes, however, that this Court has interpreted section 408.040.2, the prejudgment interest statute, to allow a claim for prejudgment interest to be made without a specific claim in the pleadings. *Call v. Heard,* 925 S.W.2d 840, 853–54 (Mo. banc 1996). This Court declines to revisit the issue.

For the foregoing reasons, the judgment is affirmed.

All concur.