STATE of Missouri ex rel. FORD
MOTOR COMPANY and
F.X. Scott, Relators,

v.

The Honorable W. Stephen NIXON, Judge of the Circuit Court of Jackson County, Missouri, Div. 5, Respondent.

No. WD 67518.

Missouri Court of Appeals, Western District.

April 24, 2007.

Jeremiah Morga, Kansas City, MO, for Relator.

Scott A. Britton–Mehlish, Independence, MO, for Respondent.

Before HARDWICK, P.J., LOWENSTEIN and SMART, JJ.

LISA WHITE HARDWICK, Judge.

This case arises from the petition of Ford Motor Company ("Ford") and F.X.

Scott ("Mr. Scott") (collectively "Relators") for a writ of prohibition. Relators seek an order prohibiting Circuit Court Judge W. Stephen Nixon ("Respondent") from exercising jurisdiction over workplace injury claims in the case of *Priscilla R. Dietiker, et al v. Ford Motor Company, F.X. Scott, and John Does 1–20,* filed in the Circuit Court of Jackson County, Missouri, Case No. 03CV–218799. Relators assert the workplace injury claims are within the exclusive jurisdiction of the Labor and Industrial Commission ("Commission") and, therefore, must be dismissed. We entered a preliminary order of prohibition, which we now make absolute.

## Factual and Procedural History

Roy Dietiker worked at the Ford automotive plant in Claycomo for over thirty years until his retirement in 1996. Five years later, he was diagnosed with mesothelioma (a type of lung cancer) and subsequently died on October 7, 2001. Prior to his death, Mr. Dietiker filed a worker's compensation claim against Ford, alleging that his cancer was caused by exposure to asbestos in the workplace. That claim is currently pending before the Commission.

In July 2003, Mr. Dietiker's wife and children ("Dietikers") filed a wrongful death action in the Circuit Court of Jackson County against Ford, Mr. Scott, who was the Industrial Relations Manager at the Claycomo plant during the relevant time period, and various "John Doe" companies that manufactured or sold asbestos products used at the Claycomo plant. The six-count petition alleged:

Count I—a negligence claim against all defendants;

Counts II and III—strict liability claims against Ford and the John Doe defen-

dants relating to asbestos products that Mr. Dietiker purchased for his personal use;

Count IV—a wrongful death claim against Ford for intentional conduct relating to the presence of asbestos in the workplace:

Count V—a wrongful death claim against Ford and Mr. Scott for fraudulently concealing the presence of asbestos in the workplace; and

Count VI—a loss of consortium claim for Mrs. Dietiker relating to all preceding counts.

Ford and Mr. Scott filed a motion to dismiss the workplace injury claims in Counts I, IV, V, and VI, for lack of subject matter jurisdiction. On December 3, 2003, the circuit court granted the dismissal on Count I but stayed discovery on Counts IV, V, and VI pending a determination by the Commission as to whether Mr. Dietiker's injuries resulted from a workplace accident or intentional conduct.[1] Ford and Mr. Scott renewed their motions to dismiss during 2005 and 2006, but the circuit court declined to grant relief.

On April 21, 2006, the Dietikers filed a motion to lift the discovery stay on the workplace claims against Mr. Scott. During a hearing on the motion, Judge Nixon inquired about the status of the workers' compensation proceeding. Upon learning that the Commission had not ruled on whether Mr. Dietiker's injuries resulted from a workplace accident or intentional conduct, Judge Nixon stated:

I think the best way to get this [case] off dead center where it's stuck right now is for me to lift the stay and you go get your writ, because then we'll know whether we should proceed with the dis-

---

1. The order dismissing Count I and staying Counts VI, VI, and VI was entered by Circuit Court Judge C. William Kramer, who was originally assigned to the case. Judge Nixon was assigned to the case in September 2004, following Judge Kramer's retirement.

covery or not ... That way we'll have a decision from the court of appeals, maybe the supreme court, and maybe they'll give an instruction to the workers comp division that they need to get off their tucus over there and get something done.

Following the hearing, the court vacated the stay on Counts IV, V, and VI, and entered an order allowing discovery to proceed on "*all* issues with *all* parties" (emphasis in original).

Ford and Mr. Scott filed a writ petition to prohibit the circuit court from exercising jurisdiction over the workplace injury claims because the Commission has exclusive jurisdiction. We issued a preliminary writ and now consider whether the prohibition should be made permanent.

### STANDARD OF REVIEW

■ "Prohibition is an independent proceeding to correct or prevent judicial proceedings that lack jurisdiction." *State ex rel. Am. Family Mut. Ins. Co. v. Koehr*, 832 S.W.2d 7, 8 (Mo.App.1992). In particular, prohibition is a proper method of preventing circuit courts from exercising jurisdiction over claims for which worker's compensation is the exclusive remedy. *State ex rel. Larkin v. Oxenhandler*, 159 S.W.3d 417, 420 (Mo.App.2005). Subject matter jurisdiction over such claims lies in the Labor and Industrial Relations Commission. *Id.* "A circuit court lacking subject matter jurisdiction may take no action other than to dismiss the suit." *Id.*

■ When a worker's compensation exclusivity defense is raised, the motion to dismiss should be granted if it appears, by a preponderance of the evidence, that the trial court lacks jurisdiction. *Id.* at 421. The burden of proving the lack of jurisdiction falls on the movant, but the quantum of proof is not high. *Id.* We interpret the Worker's Compensation Law liberally, and

where there is doubt regarding jurisdiction, we resolve it in favor of the Commission. *Id.*

### ANALYSIS

■ Relators seek to prohibit the circuit court from exercising jurisdiction over the workplace injury claims in Counts IV, V, and VI. Respondent contends the circuit court has subject matter jurisdiction because the workplace injuries were not accidental and, instead, resulted from intentional acts and the affirmative negligent acts of a co-employee, for which workers' compensation is not the exclusive remedy.

■ Pursuant to Section 287.120, workers' compensation is the exclusive remedy for an employee's accidental death or injury arising out of and in the course of his employment. The Commission has exclusive and original jurisdiction over claims for injuries covered by the Workers' Compensation Law. *State ex rel. FAG Bearings Corp. v. Perigo*, 8 S.W.3d 118, 121 (Mo. App.1999). The Commission also has original jurisdiction to determine the fact issues establishing jurisdiction. *Id.* In that regard, only the Commission can determine whether an employee's injuries are the product of an accident or the intentional act of an employer. *Id.* at 122.

The Dietikers cannot avoid the exclusive jurisdiction of the Workers' Compensation Law merely by alleging that Ford intentionally injured Mr. Dietiker by concealing the danger of asbestos in the workplace. *See Killian v. J & J Installers, Inc.*, 802 S.W.2d 158 (Mo. banc 1991). The circuit court lacks subject matter jurisdiction to consider whether Ford's work-related conduct was intentional or accidental. Accordingly, the court should have granted Ford's motion to dismiss the workplace injury claims in Counts IV, V, and the related claim in Count VI.

■ The circuit court also lacks subject matter jurisdiction to proceed on the workplace injury claims against Mr. Scott. The Dietikers' petition alleged that Mr. Scott knew of the asbestos hazard at the Claycomo plant and failed to disclose the information to Mr. Dietiker. The petition does not assert that Mr. Scott had any supervisory authority over Mr. Dietiker, but alleges that Mr. Scott warned Ford that the plant should be monitored and evaluated for potential asbestos exposure. These allegations are insufficient to support a common law claim for the negligence of a co-employee.

■ Personal lawsuits against a co-employee for breach of the duty to maintain a safe working environment are preempted by worker's compensation unless the co-employee performed an affirmative negligent act outside the scope of the employer's duty. *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621–22 (Mo. banc 2002). Missouri courts frequently use the "something more" test in considering whether the co-employee's affirmative act created an "additional danger beyond that normally faced in the job-specific work environment." *Burns v. Smith*, 214 S.W.3d 335, 338 (Mo.banc 2007). An affirmative negligent act cannot arise from a mere failure to correct an unsafe condition; it must be separate and apart from the employer's non-delegable duty to provide a safe workplace. *Id.*

The Dietikers contend Mr. Scott met the "something more" requirement by actively concealing information about the asbestos hazard from Mr. Dietiker. We disagree. In those cases where co-employee liability has been found, a supervisor personally engaged in affirmative negligent conduct by directing the employee to engage in dangerous conditions that a reasonable person would recognize as hazardous beyond the usual requirements of employ-

ment. *Larkin*, 159 S.W.3d at 423. Here, there is no indication that Mr. Scott gave any directives to Mr. Dietiker or had any obligation to do so. Ford had the duty to provide a safe work environment, and Mr. Scott, as the Industrial Relations Manager of the Claycomo plant, performed his duty by informing Ford of potential asbestos dangers. We find nothing in the Dietikers' petition to suggest that Mr. Scott committed an affirmative negligent act that was outside the scope of his employer's duty to provide a safe work environment. Because the petition fails to state a claim for co-employee liability, the circuit court does not have jurisdiction to proceed on the negligence and loss of consortium allegations against Mr. Scott.

### CONCLUSION

The preliminary writ of prohibition is hereby made absolute. The Respondent is directed to take no further action on Counts IV, V, and the related loss of consortium claims in Count VI, other than to dismiss those Counts without prejudice. It is so ordered.

All concur.