STATE ex rel. Jeffrey Wayne
PATTON, Relator,

v.

Honorable Jack GRATE, Circuit Judge,
Division 17, 16th Judicial Circuit,
Respondent.

No. WD 67622.

Missouri Court of Appeals,
Western District.

Nov. 20, 2007.

Rehearing Denied Jan. 29, 2008.

David R. Buchanan, Kansas City, MO, for Relator.

Paul E. Evans, Independence, MO, for Respondent.

Before LOWENSTEIN, P.J., ULRICH and BRECKENRIDGE,[1] JJ.

HAROLD L. LOWENSTEIN, Judge.

This case involves a petition for a writ in prohibition brought by Jeffrey Patton. James Scherzer brought suit against Patton, his supervisor at Cardinal Brands, for personal injury arising out of an accident that occurred while Scherzer was employed as a book trimmer. The trial court denied Patton's motion to dismiss based on lack of subject matter jurisdiction. Patton then petitioned this court for a writ prohibiting the trial judge from taking any further action other than dismissing the case. This court entered a preliminary writ in prohibition, which is now made absolute.

The underlying issue is whether the Patton, the relator-supervisor, engaged in "something extra" beyond a breach of duty of general supervision and safety, that would permit Scherzer to seek a remedy outside the exclusive purview of the Workers' Compensation Law, Section 287.120.2,[2] and, therefore, render Patton susceptible to this personal injury suit.

The facts, as gleaned from the pleadings and the transcript of an evidentiary hearing, indicate that Scherzer was new to the job of operating a book-trimming machine. The machine utilized three cutting knives to trim stacks of paper and a suction device to suck the waste through a chute into a trash bin. The debris chute periodically clogged. Scherzer was injured when he stuck his hand into the debris chute to free the clog while the machine was still operating.

Scherzer claims that the relator, Patton, gave him a brief description of how to operate the machine and how to shut off the trimmer, but told him he should not have to shut off the machine unless the bin for trimmings became full. He claims that Patton showed him the debris chute and told him to watch the area where clogs had occurred. Scherzer stated that he was told to shut off the machine when the trimming job was complete. Scherzer testified that he was not instructed on how to deal with the clogs nor told by Patton that he would have to shut off the machine before trying to dislodge any blockage.

Patton testified that he thought it was common sense that a person would not put his hands into the trimmer, a machine with three sharp blades, without first turning off the machine. He also stated that Scherzer had seen another employee turn off the machine before attempting to clear such a blockage.

The standard of review applicable to this case is set forth in *Sexton v. Jenkins & Associates, Inc.*, 41 S.W.3d 1, 3 (Mo.App.2000):

1. Ulrich, J., was a member of this court at the time the case was argued and submitted. He has subsequently retired from the court. Breckenridge, J., was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

2. All statutory references are to RSMo (2000).

A motion to dismiss is the proper method to raise as a defense to a tort action when it appears by the preponderance of the evidence that exclusive jurisdiction is with the Industrial Commission pursuant to the law. The court is the arbiter for the facts and the law in deciding this question. Failure to grant a proper motion to dismiss is remedied by sustaining a writ in prohibition.

■ Section 287.120.2, as here applicable, limits the remedies available to employees who have suffered accidents arising out of and in the course of employment to those provided under the Workers' Compensation Act. As pointed out in *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621 (Mo. banc 2002), the Workers' Compensation Law is the exclusive remedy for injury covered by the law and, pursuant to that law, immunity from negligence suits is extended to co-employees for failure to maintain a safe work environment.

A fellow employee may be sued, however, for "*affirmative negligent acts* outside the scope of an employer's responsibility to provide a safe workplace." *Id.* (internal citations omitted)(emphasis added). The Court in *Taylor* stated that what constitutes an affirmative negligent act is not "susceptible of reliable definition" and must be determined on a "case-by-case basis with close reference to the facts in each individual case." *Id.* at 622.

In *Taylor*, a fellow employee, driving a truck, ran into a mailbox, causing the plaintiff, a fellow employee, to fall. *Id.* at 621. The Court stated that this failure to drive carefully was not converted into "something more" so as to allow a negligence suit against the driver. *Id.* at 622. Accordingly, the Workers' Compensation Law was the exclusive remedy and the trial court lacked subject matter jurisdiction to hear the suit. *Id.* A writ of prohibition was proper where the trial court would not dismiss the action. *Id.* at 621.

Scherzer relies heavily on the recent Supreme Court of Missouri case, *Burns v. Smith*, 214 S.W.3d 335 (Mo. banc 2007), under the facts of which the co-employee was not protected by the immunity provided by Section 287.120. The Court held that the co-employee's actions constituted "something more" giving rise to a negligence action against him. The Court stated that an affirmative act is one "that creates additional danger beyond that normally faced in the job-specific work environment." *Id.* at 338.

In *Burns*, the employee-defendant negligent by welded over a rusted portion of a water tank, and then, most importantly, "directed plaintiff to 'run it till it blows.'" *Id.* at 339. Such an affirmative direction, the Court held, satisfied the "something more test." *Id.* In reaching this conclusion, the Court likened the facts to those of *Tauchert v. Boatmen's National Bank of St. Louis*, 849 S.W.2d 573 (Mo. banc 1993), in which a plaintiff-employee was injured when a make-shift hoist system for an elevator, prepared by a supervisor, upon which the plaintiff was standing, failed and fell five floors. *Burns*, 214 S.W.3d. at 340. The Court pointed to language in *Tauchert* that held that the "[d]efendant's alleged act of personally arranging the faulty hoist system ... may constitute an affirmative negligent act outside the scope of his responsibility to provide a safe workplace for plaintiff." *Burns*, 214 S.W.3d at 340 (*quoting Tauchert*, 849 S.W.2d at 574).

Likewise, in *Groh v. Kohler*, 148 S.W.3d 11 (Mo.App.2004), an employee-supervisor was held subject to a suit for negligence. There, the injured employee was operating a plastic forming machine in which the plastic would accumulate, requiring removal by the employee, and which would sometimes compress without the employee de-

pressing the foot pedal to activate the machine. *Id.* at 12. The employee informed her supervisor of the problem, to which the supervisor responded, "quit whining ... just deal with it." *Id.* The petition alleged that the supervisor, knowing the defective nature of the machine, failed to inspect or repair the defective equipment, and, with regard to the obvious problem of continued use of the machine, made dangerous a job that was not, in and of itself, inordinately dangerous. *Id.* at 13. As such, the supervisor's direction to the employee to participate in unreasonably dangerous acts constituted the "something more" necessary to maintain the negligence suit. *Id.* at 16.

Courts, in a number of other cases, have found that the allegedly negligent actions of a co-employee did *not* constitute the "something more," by way of actionable, affirmative conduct by a supervisor that went beyond a general failure to fulfill the general duty of supervision and safety. *J.M.F. v. Emerson,* 768 S.W.2d 579, 581 (Mo.App.1989). In *State ex rel. Larkin v. Oxenhandler,* 159 S.W.3d 417 (Mo.App. 2005), Larkin was driving construction equipment and backing down a highway. *Id.* at 419. A fellow employee, Blades, was walking behind the vehicle to alert oncoming traffic. *Id.* Larkin, who could not see directly behind him, backed over Blades, resulting in his death. *Id.* Blades's heirs brought a wrongful death suit against Larkin, and Larkin filed for a writ in prohibition. *Id.* at 419–20. This court, in granting the writ, observed that the "something extra" requirement usually meant the co-employee must have been " 'directing the employee to participate in acts that were dangerous and that a reasonable person would recognize to be hazardous and beyond the usual requirements of the employment,' " that is, beyond maintaining a safe working environment. *Id.* at 423

(quoting *Groh v. Kohler,* 148 S.W.3d 11, 14 (Mo.App. W.D.2004)).

■ In *Nowlin ex rel. Carter v. Nichols,* 163 S.W.3d 575 (Mo.App.2005), this court affirmed the dismissal of a negligence suit against a supervisor who directed an employee to help extricate a bulldozer stuck in the mud by rigging it to a chain attached to a second bulldozer. *Id.* at 577, 580. Leaving the motor running, the supervisor got out of the second bulldozer, which subsequently rolled downhill, crushing the employee. *Id.* at 577. The opinion reiterated that, for a suit to escape the exclusive jurisdiction of the Workers' Compensation Law, the supervisor must have "created a hazardous condition by personally directing the [employee] to engage in conduct" that resulted in injury or causing the injury. *Id.* at 578. "An affirmative negligent act is not synonymous with any negligent act, as the law requires a purposeful act 'directed' at a co-employee." *Id.* at 579.

In *Davis v. Henry,* 936 S.W.2d 862 (Mo. App.1997), the eastern district addressed the issue of "something more" in a suit brought by an employee against his supervisor who had ordered the employee, a truck driver, to pick up a very heavy load of cement. *Id.* at 863. En route, the truck overturned. *Id.* The trial court dismissed the suit. *Id.* at 864. The appellate court noted the general rule set forth in *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175 (Mo.App.1982), that a supervisor charged with a duty to provide a safe working environment has immunity from suit for failing to discharge that duty. *Id.* at 864. To overcome that immunity, the employee must show that the supervisor participated in "something more." *Id. See Hedglin v. Stahl Specialty Co.,* 903 S.W.2d 922 (Mo.App.1995) (where the supervisor arranged for an employee to be dangled from the tines of a forklift over a

vat of scalding water.). The court held that negligence in failing to instruct the driver "of the dangers associated with towing a hauler containing thirty-five tons," the supervisor did nothing more than fail to discharge his duty to provide a safe environment, and, therefore, the employee did not plead facts constituting the "something more" necessary to maintain the negligence suit. *Davis,* 936 S.W.2d. at 864.

Here, Scherzer has not pled an affirmative act by Patton that caused him to engage in activity resulting in his injury. The holding in *Burns v. Smith* was based the very different facts from those at the case at bar, specifically the supervisor's affirmative direction to run a pressurized water tank "till it blows." *Burns,* 214 S.W.3d at 339. In *Burns,* the facts were such that the Court could clearly identify the "something more" or "something extra" necessary to maintain the negligence suit. The case at bar presents no such affirmative direction from Patton to Scherzer. Although Patton may have breached a duty to supervise or provide a safe workplace, his actions do not rise to the level of an affirmative, negligent act resulting in the employee's injury.

Scherzer's petition fails to allege the something more required to deprive the Labor and Industrial Relations Commission of its exclusive jurisdiction over his claim. The injured employee is not denied access to the courts—he may bring his action under the Workers' Compensation Law. The preliminary rule in prohibition is made absolute.

All concur.